THOMAS DEVER, *Appellant,* v. JOHN MONTGOMERY et al., *Appellees.*

No. 18,192.

SYLLABUS BY THE COURT.

LIBEL—*Article Published in Newspaper—Of City Mayor—Not Libelous per se.* It is not libelous *per se* to publish of the mayor of a city that he had said, referring to a matter concerning which the law gave him discretion to act as he saw fit, that he was running the town, and the council and people had nothing to do about it.

Appeal from Geary district court. Opinion filed May 10, 1913. Affirmed.

*Thomas Dever,* of Junction City, for the appellant.

*W. S. Roark,* and *J. V. Humphrey,* both of Junction City, for the appellees.

The opinion of the court was delivered by

MASON, J.: Thomas Dever brought action against the publishers of a newspaper for damages on account of a statement printed therein with respect to his conduct as mayor. A demurrer to his petition was sustained, and he appeals.

No special damages were alleged, and no circumstances were set out such as to give to the language complained of any other than its ordinary effect. The question presented is whether the published article is libelous in itself, assuming it to be false. It is of that character if it tends to subject the plaintiff to disgrace, ridicule or contempt, irrespective of whether it charges him with committing any illegal act. (*Eckert v. Van Pelt,* 69 Kan. 357, 76 Pac. 909, 66 L. R. A. 266, and cases there cited; *Schreiber v. Gunby,* 81 Kan. 459, 106 Pac. 276; 25 Cyc. 346-351.) The body of the article reads as follows:

"Junction City has got a man who defies the taxpayers, defies the city council, of which he is the head, defies them all and says the council or people have nothing to say about Junction City, only what he says, that's the mayor's attitude just at present.

"The members of the city council for the past week have waited for the mayor to call their attention to the fact that a petition containing over 1600 names signed by the people of the city had been handed to him asking for a meeting of the city council. Not a word from the mayor to the council during this time. Last evening the members of the council met, talked over the matter and decided that perhaps a council consisting of eight good sound men had a little to say regarding the running of this city and so asked the mayor to call a meeting for this evening.

"The call was made out this morning signed by the council and handed to the city clerk he handed it to the mayor and the mayor laughed.

Dever v. Montgomery.

"When asked by a reporter of the *Union* if he was going to recognize his council and the people of the city the mayor said that he was running the town and the council or people did not have anything to do about it. Asked if he intended to do anything he insinuated that it was up to the council and the people to do something if they wanted anything done.

"The councilmen of the city and each and every one of them have taken the time to look up the matter and realize that the people should be given an opportunity to vote. If at the election they decided it was not the right thing they would at least have given them an opportunity to express themselves.

"As the matter stands this afternoon it is the city council and a petition signed by 1600 of their supporters against one man, the mayor, asking him to grant them a favor of calling a meeting of the city council."

This appeared under the following headlines: "The Mayor is it? Refuses to recognize council or people of the city. Council met last evening. The mayor says he is running the town and the people have nothing to say."

The portion of the article which undertakes to state the facts with reference to the presentation of a petition and a request for a meeting of the council is obviously not actionable. If the publication is libelous it must be because of the headlines, the first paragraph, and the following language:

"When asked by a reporter of the *Union* if he was going to recognize his council and the people of the city the mayor said that he was running the town, and the council or people did not have anything to do about it."

Considered alone, a published statement that the mayor had refused to recognize the council or people of the city, or that he had defied the taxpayers and council, or that he had said that he was running the town and that the council or people did not have anything to do about it, might be regarded as tending to subject him to disgrace, ridicule or contempt.

But each of these statements must be considered in connection with the others, and with the remainder of the article, and the whole must be fairly and reasonably construed. In saying that the plaintiff had defied the taxpayers and council and had failed to recognize the council and people, the writer of the article plainly meant no more than that such was his conception of the effect of the language attributed to the plaintiff— that he was running the town, and the council and people had nothing to do about it. If the published statement that the plaintiff had used these words was not a libel in itself, it was not converted into one by adding that his language showed a disregard for the council and the public. The substantial question for determination is whether it was libelous to publish that the plaintiff had said that he, and not the public or council, was running the city. This language again must be considered in the light of accompanying circumstances. What the plaintiff is alleged to have said must be regarded as applying to the particular matter under discussion, namely, the calling of a meeting of the council. He was not in any just sense accused of saying that in all respects he was running the city and the council and people had nothing to do with it, but with saying that so far as related to the calling of the meeting he and no one else was in control—that he alone had the "say."

The statute provides that special meetings of the council "may" be called by the mayor on the written request of three members of the council. (Gen. Stat. 1909, § 1362.) It might well be contended that the word "may" as so used has the force of "shall," upon the ground that the public has an interest in the matter. (36 Cyc. 760, 761; 5 Words & Phrases, pp. 4420, 4436.) The same language has been interpreted as only permissive where used with regard to the calling of a school-district meeting (*The State v. School District,* 80 Kan. 667, 103 Pac. 136); but important considera-

tions upon which that decision was based would obviously not apply here. However, as this question has not been argued, it will not be decided. Both parties to the present action appear to assume that under the statute the mayor is vested with a discretion to call a meeting upon a proper request, or to refuse to do so, and the case will be considered upon that assumption. In that view of the matter, the responsibility of determining whether a meeting should be had was upon the plaintiff alone. Whatever advisory effect he might see fit to give to petitions and requests, he was bound finally to act upon his own best judgment in view of all the circumstances; his official oath would not permit him to do otherwise. The court is of the opinion that the plaintiff could not be subjected to disgrace, ridicule or contempt by reason of the defendants' publishing of him that he had said in effect, referring to the calling of a council meeting, that he alone was managing the affairs of the city in that regard—colloquially that he was running the town and the council and the people had nothing to do about it.

The judgment is affirmed.