### BROWN v. HOUSTON PRINTING CO.
### (No. 933.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 19, 1923.)

**Libel and slander �824(3)—Editorial attacking candidate for Legislature held not libelous.**

An editorial charging that a candidate for the Legislature was opposed to the Governor's "win-the-war legislation," would discourage the President and war administration by voting to put the saloons around the army camps again, and found no fault with alleged official misconduct of the Governor's primary opponent, *held* not libelous, but a reasonable and fair discussion of public issues.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by J. W. Brown against the Houston Printing Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Stevens & Stevens and Gordon & Rowe, all of Houston, for appellant.
T. H. Stone, of Houston, for appellee.

WALKER, J.  We take the following statement of the nature and result of this suit from appellant's brief (appellee has filed no brief):

"This suit was instituted in the district court of Harris county by J. W. Brown against the Houston Printing Company. The plaintiff's petition alleged that about the 25th day of June, 1918, he was a candidate before the Democratic primaries for the Legislature from Harris county, and that the defendant published a newspaper named the Houston Post, which had a large circulation in Harris county and through the state of Texas. The petition alleges, among other things, that the defendant through the said newspaper at the said time published an article stating that the plaintiff and certain other persons who stood for the Legislature were opposed to the Hobby win-the-war legislation; that they would, if they had a chance, discourage the President and the war administration by voting to put the saloons around the camps again. It also means that they find no fault with Ferguson's conduct, and do not believe that such conduct disqualifies one for the public service. But those who do object to such conduct as characterized Ferguson's financial transactions, and who condemned such corruption in office, must support a legislative ticket that will stand for higher ideals in the public service, and that will never

---

(255 S.W.)

support a bill to return to the immorality and debauchery that flourished in the vicinity of the camps before the Hobby laws were enacted.

"The petition further alleges: The said article, in express terms, states that plaintiff is a candidate on the Ferguson ticket for position No. 1, when in truth and fact he is not and never has been a candidate on the Ferguson or any other ticket, but is making his race wholly upon his merits as a citizen. That said article also by innuendo charges and means that the plaintiff is not a loyal American citizen. It was further alleged that the statements contained in said publication were untrue and were slanderous and were published by the said Houston Printing Company willfully and maliciously, and without any attempt on the part of the said Houston Printing Company to inform itself as to the truth or falsity of the same before publishing them and circulating them as above set forth, and that said matter so published caused the plaintiff to be held up to public ridicule. The defendant presented a general demurrer, which was sustained by the court, and, the plaintiff declining to amend his cause of action, the case was accordingly appealed to this court."

The editorial referred to is as follows:

"Voting for Legislators.

"Position No. 1 Norman G. Kittrell, Jr.
J. W. Brown
"Position No. 2 J. W. Hall
E. H. Vasmer
"Position No. 3 Charles Murphy
A. R. Teichman
"Position No. 4 Lynch Davidson
R. H. Holland

"The fact that the electorate has been increased by some 15,000 new voters renders it important to explain the legislative ticket. There are four legislative positions to be filled, and each voter is entitled to vote for four members, one for each legislative position. These positions and the candidates for them are indicated above. The woman who would vote the Hobby legislative ticket must vote for the four men indicated above. To vote for three Hobby candidates and one Ferguson candidate would be three-fourths of a vote for Hobby. To vote for two Hobby candidates and two Ferguson candidates would be half a vote for a Ferguson delegation.

"If you want to vote for legislators who will be in sympathy with Governor Hobby's policies, if you want to vote for the retention of the zone law and other war measures for the protection of the military camps against drunkenness, debauchery, disease, demoralization and weakness, vote for the legislative ticket which is supporting Governor Hobby. To do this, when you reach the legislative positions on the official ballot, mark it as shown above.

"The four candidates of the Ferguson ticket should be kept in mind. They are J. W. Brown for position No. 1, who is opposing Norman G. Kittrell, Jr.; E. H. Vasmer, who is opposing J. W. Hall; A. R. Teichman, who is opposing Charles Murphy; and R. H. Holland, who is opposing Lynch Davidson. These men are Ferguson men—the Ferguson ticket as announced by C. E. Stevens at the Hanger speaking. This means that they are opposed to the Hobby win-

the-war legislation; that they would, if they had a chance, discourage the President and the war administration by voting to put the saloons around the camps again. It also means that they find no fault with Ferguson's conduct, and do not believe that such conduct disqualifies one for the public service.

"But those who do object to such conduct as characterized Ferguson's financial transactions, and who condemn such corruption in office, must support a legislative ticket that will stand for higher ideals in the public service, and that will never support a bill to return to the immorality and debauchery that flourished in the vicinity of the camps before the Hobby laws were enacted."

Appellant advances the following propositions for reversal of this cause:

(1) "During the World War a charge that an individual, either a private citizen or a candidate for office, was opposed to a policy for winning the war and would discredit the President and the war administration by voting to put saloons around the camps again, is libelous per se."

(2) "A charge by indirection that a candidate for the Legislature would support a policy to return to the immorality and debauchery that flourished in the vicinity of the army camps before a certain law was enacted, if made maliciously, is libelous."

(3) "A publication which directly or by innuendo states that a private citizen or a public man, when his country is at war with another nation, is unpatriotic, even if the same be qualifiedly privileged, is libelous, if the matters therein stated are untrue and maliciously published. Hence, where the position contains allegations of matter, with allegations that the words were published maliciously, it was error for the court to sustain a general demurrer to plaintiff's petition."

### Opinion.

In our judgment, the general demurrer was correctly sustained. The editorial was a reasonable and fair discussion of one of the great issues of that day. The prohibition legislation just enacted at that time was a subject of public discussion, and one on which men might and could differ. Those in favor of it were interested in having legislators who would not vote to repeal what had been enacted. Those opposed were privileged to vote for men who would vote their sentiments. It appears from the editorial that it was supporting Hobby and Hobby's policies, and the men who were supporting the Hobby administration. True, it says:

"This means that they [including appellant] are opposed to the Hobby win-the-war legislation."

Again, it says:

"They would, if they had a chance, discourage the President and war administration by voting to put the saloons around the camps again."

But it is not made to appear, by any innuendo or otherwise, that all honorable men

were supporting the particular policies favored by Governor Hobby, and that public sentiment was such that a man would be subjected to contempt of his friends and neighbors if he did not support Governor Hobby, nor does it appear, by innuendo or otherwise, what particular policies were referred to as "the Hobby win-the-war legislation." We do not think it should ever be libelous to charge one with being opposed to or in favor of legislation which is pending as a matter of public interest, and on which the citizenship of the state may take opposite views. Appellant was not charged with being unpatriotic, nor with being opposed to winning the war, nor with discouraging the President. The most that can be said against the statement is that in the opinion of the editor a vote to repeal the zone laws, as affecting the saloons around the army camps, would be discouraging to the President and his administration. Such a statement is never libelous. Again, the editorial says:

"It also means that they found no fault with Ferguson's conduct, and do not believe that such conduct disqualifies one for public service."

It is a curious allegation—to charge one with libel on the ground that he was a friend to Governor Ferguson. Many good men and women opposed the Governor, and condemned with all the vehemence in their nature his private and official acts, but others, equally as patriotic, supported him, defending and explaining his conduct, and have remained his personal and political friends continuously to this day. In the Ferguson-Hobby primary they voted for Governor Ferguson by the hundreds of thousands, and in the recent primary gave him the second place as a candidate for the Senate of the United States of America.

What we have said in relation to the excerpts quoted applies with equal force to the entire editorial. On authority of Belo v. Looney, 112 Tex. 160, 246 S. W. 777, Blum v. Kusenberger (Tex. Civ. App.) 158 S. W. 779, Houston Chronicle Publishing Co. v. Wegner (Tex. Civ. App.) 182 S. W. 45, and Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 874, 152 S. W. 167, the judgment of the trial court is affirmed.