**HERALD–POST PUBLISHING COM-
PANY, Appellant,**

**v.**

**Fred HERVEY, Appellee.**

No. 5095.

Court of Civil Appeals of Texas.

El Paso.

July 15, 1955.

Rehearing Denied Sept. 28, 1955.

W. E. Ward, Isaacks & Ward, R. E. Cunningham, El Paso, for appellant.

Andress, Lipscomb, Peticolas & Fisk, El Paso, for appellee.

HAMILTON, Chief Justice, and FRAS-ER, Justice.

This is a suit for libel, by Fred Hervey, Mayor of the City of El Paso, against the Herald-Post Publishing Company, in the District Court of El Paso County, 34th Judicial District of Texas. The case was tried to a jury, which found that certain statements made in an article published in the El Paso Herald-Post, a newspaper owned by the Herald-Post Publishing Company, were not substantially true, that they were published and circulated by said paper with actual malice toward plaintiff, and that plaintiff was damaged thereby in the sum of $20,000 actual damages and $5,000 exemplary damages, upon which judgment was rendered. Motion for new trial was overruled, and the Herald-Post Publishing Company appeals therefrom.

That part of the article which is complained of by the appellee, Fred Hervey, and which concerns him, is as follows, to-wit:

"Mayor's Retirement Plan Aimed
At One Employe.

"Mayor Hervey put his policy of forced retirement for City Employes at age of 65 into effect to get rid of one employe, he said at a Pension Board meeting yesterday.

"During discussion of a request to allow a 68-year-old employe to work

for an additional 13 months so that he would be eligible for a City pension, Mayor Hervey said:

" 'After all, we only passed the 65-year-old-rule to get rid of one employe.'

The mayor did not elaborate on that statement. He did not say who the 'employe' was.

*Exemps* Employe.

"The City has retired several veteran employes during the past two months, including City Clerk William R. Collins, City Engineer Hal Stacey, Park Superintendent Hugo Meyer and Street Superintendent James Schwartz. Another long-time employe, City Plan Engineer Walter Stockwell, retires this month.

"The Mayor, who favors youthful employes, made a special exception to the retire-regardless-at-65 rule.

"He recommended that a senior electrical inspector be permitted to stay on the City payroll another 13 months so that he will have ten years' service, and be eligible for a pension.

"At the same time, three other employes who need only a few more months' employment to be eligible for the pension were by-passed.

He Expected a Pension.

"The employe who received the Mayor's favor is W. J. Adams, senior inspector in the electrical inspection department. Mr. Adams, who is 68 and was slated to retire this month under the Mayor's youth movement, was employed by the City on Oct. 1, 1944. He becomes eligible for pension on Sept. 30, 1954.

"Mayor Hervey explained Mr. Adams' case to the pension board.

" 'He came to work with the idea that he would receive a pension,' the Mayor said.

"Asked if the City could go ahead and keep Mr. Adams on the payroll, the Mayor said he supposed so.

Asked for Motion.

"Without further discussion, Mayor Hervey asked one of the pension board members to make a motion that the Council be requested to keep Mr. Adams on the payroll. The motion carried.

"E. H. Krohn, board member, said that since the City has made arangements to benefit employes who retire now before a pension increase in the new Charter is approved, it should also make special consideration of employes such as Mr. Adams.

" 'Yes', said Mayor Hervey. 'We will have to consider each case on its merits.'

Three turned Down.

"Under his retire-regardless-at-65-plan, the Mayor made arrangements for retention of selected employes. The plan allows that certain employes can stay on with approval of the head of the employe's department, the alderman in charge of the department, the Civil Service Commission and City Council.

"But in allowing Mr. Adams to continue in his job, the Mayor overlooked three other employes who lack only a few months to be eligible for a pension after ten years' service.

"They are: Juan de Aro, 72, a laborer in the Street Department, who becomes eligible in June 1955. He began to work with the City on June 5, 1945.

"Juan Gomez, 69, a park policeman, who becomes eligible in May 1945. He was first employed by the City on May 18, 1945.

Mr. De Aro actually has less time to serve toward his ten years than Mr. Adams.

Agree on Revision.

"The three employes will, however, be eligible for a rebate of their contributions to the pension fund. They have not yet submitted applications for rebate, but must be off the City payroll by Aug. 31. * * *" (Herald-Post, August 19, 1953.)

The retirement plan referred to in said article was Ordinance No. 614 of the City Council of El Paso, a copy of which follows:

"Ordinance No. 614.

"An Ordinance Establishing A Maximum Age Limit For Employees In The Classified Service

"Be It Ordained by The City Council of the City of El Paso:

"No employee in the classified service shall continue to hold his office or position after he has reached his sixty-fifth birthday.

"If the employee is a contributor to the City Employees Pension Fund, he shall upon retirement under this ordinance be entitled to a pension in an amount computed as provided in Section 6 of the ordinance establishing the Pension Fund, or if he has served less than ten years, he shall be entitled to refund, without interest, of the amount he has himself contributed to the fund. If he is a contributor to the Fire and Police Pension Fund, he shall not be retired under this ordinance until he is entitled to retirement or disability pension under the state statute creating said fund.

"Provided, the Civil Service Commission may, upon recommendation by the City Council, waive this age limit in any case where the Commission finds that the employee is still mentally and physically capable of doing his work efficiently and it would be to the best interest of the City to permit him to remain in the service. If such permission is granted, it may be withdrawn at any time.

"This ordinance does not affect the maximum and the minimum age limits for employees at the time of appointment as established in Ordinance No. 59, passed and approved August 26, 1948, and No. 77, passed and approved October 14, 1948, which shall remain in effect.

"Passed and Approved this 16th day of August, 1951.

/s/ Fred Hervey,
Mayor.
Attest:
/s/ W. R. Collins,
City Clerk."

The record bears ample evidence that for several years the Herald-Post and its editor, Mr. E. M. Pooley, had on many occasions bitterly criticised the actions and policies of the Mayor of El Paso, Mr. Fred Hervey.

Appellant, Herald-Post Publishing Company, raises thirty points of error. While its principal claims are that the article complained of is not libelous, is substantially true and was conditionally privileged, points 1 through 4 refer to the objection that the article and the statements therein claimed to be false are not libelous. The plaintiff below in his petition, after setting out in verbatim the article complained of, points out the particular parts of said article which he claimed to be false, as follows:

"Mayor Hervey put his policy of forced retirement of city employes—

"Under his retire-regardless-at-age 65 plan the Mayor made arrangements—

"Mayor Hervey puts his policy of forced retirement of city employes at age 65 into effect to get rid of one employe, he said at a Pension Board meeting—

"During discussion of request to allow a 68 year old employe to work an additional 13 months so that he would be eligible for a city pension, Mayor Hervey said: 'After all, we only passed the 65-year-old rule to get rid of one employe'."

The court submitted two issues covering the truth or falsity of the objectionable matters. They are, together with the answers of the jury, as follows, to-wit:

"Question No. 1: Do you find from a preponderance of the evidence that the statements contained in the news article on the front page of the El Paso Herald Post published and circulated on August 19, 1953 that the retirement plan or policy for the retirement of employees of the City of El Paso was the 'Mayor's Retirement Plan' and was the plan or policy of the Plaintiff Fred Hervey as the Mayor of the City of El Paso, were not substantially true, or the statements were substantially true? We answer: The Statements were not substantially true.

"Question No. 2: Do you find from a preponderance of the evidence that the following statements: 'Mayor's Retirement Plan Aimed At One Employee'. 'Mayor Hervey put his policy of forced retirement for city employes at age of 65 into effect to get rid of one employe, he said at a Pension Board Meeting yesterday.'

"During discussion of a request to allow a 68-year-old employe to work an additional 13 months so that he would be eligible for a city pension, Mayor Hervey said:

"'After all, we only passed the 65-year-old rule to get rid of one employe'. contained in an article on the front page of the El Paso Herald Post of August 19, 1953, were not substantially true?

"Answer: The statements were not substantially true', or 'the statements were substantially true.'

"We answer: The statements were not substantially true."

The first question which we are called upon to pass, is raised by appellant's first four points, that is, whether or not the statements complained of in the article, or the article itself is libelous. If the statements are unambiguous, it is a matter for the court to determine whether or not they constitute libel. We hold that the article or the statements therein contained, complained of by appellee, are un-ambiguous, as is contended by both appellee and appellant. In determining the question of libel we will assume that the statements complained of were not substantially true, and were made with malice. Our Legislature in 1901 enacted Art. 5430, V.A. C.S., which reads as follows:

"Article 5430. 5595 Definitions

"A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury."

We wish first to point out that publications about public officials are treated differently than publications about private individuals, in that even a rather vigorous and untrue condemnation of an official as an official is not libelous per se unless it charges him with an offense for which he may be removed from office, whereas the same condemnation of a private individual might be libelous per se. Fitzjarrald v. Panhandle Pub. Co., 149 Tex. 87, 228 S.W.2d 499, loc. cit. 506.

There is no question here but the article refers to the appellee Fred Hervey as an official, not as a private citizen. That part of the article which refers to the city's retirement plan for employes aged 65 as being the "Mayor's Plan" could not by any stretch of the imagination be construed as accusing the Mayor of something that would be cause for his removal from office, consequently even though the statement be false it could not constitute libel per se. However, there is a distinction which the court has made with reference to public

officials or candidates for public office, as referred to above. If one is accused of doing something or standing for something that he may legally and properly do, then such statement not being defamatory would not be the basis for libelous action, even though it may be hurtful to him in some of the respects set out in said Art. 5430 V.A.C.S. Snider v. Leatherwood, Tex. Civ.App., 49 S.W.2d 1107.

In the case before us the Mayor is given credit for the city's retirement plan for aged employes. It is well known that most private businesses of any size provide for a retirement plan, the Federal government provides for retirement of its aged employes, the Army, the Navy and the Air Force provide such a plan—most all cities of the size of El Paso provide for a retirement plan; in fact if the city of El Paso did not provide for the retirement of its aged employes, with a provision for pensions, it would indeed be a most backward city. Regardless of the desirability of such a plan, if it be a matter on which the public may generally be divided as to its desirability, still a false statement with reference to how an official stood on such a question would not be the basis for a libelous action. The fact that some employes who became subject to retirement under such plan be embittered against the Mayor would not alter the situation. The Mayor could have legally and properly promulgated and sponsored the retirement plan in his official capacity and the false accusation not being defamatory could not be the basis of a libelous action. Caufield v. El Paso Times, Inc., Tex.Civ.App., Austin, 280 S.W.2d 766; 33 American Jurisprudence, p. 44, ¶ 10; Sweeney v. Caller-Times Publishing Co., D.C., 41 F.Supp. 163; Sweeney v. Patterson, 76 U.S.App.D.C. 23, 128 F.2d 457–458; Brown v. Houston Printing Co., Tex.Civ.App., 255 S.W. 254; Houston Chronicle Pub. Co. v. Thomas, Tex.Civ.App., 262 S.W. 243; Nunn v. Webster, Tex.Com.App., 260 S.W. 157; 27 Tex.Jur. p. 659, ¶ 40; Snider v. Leatherwood, Tex.Civ.App., 49 S.W.2d 1107; Ferguson v. Houston Press Co., Tex.Civ.App., 1 S.W.2d 387, affirmed by Tex.Com.App., 12

S.W.2d 125; Dever v. Montgomery, 89 Kan. 637, 132 P. 183; Hall v. Binghamton Press Co., 263 App.Div. 403, 33 N.Y.S.2d 840.

The next part of the article complained of by appellee

"During discussion of a request to allow a 68-year-old employe to work an additional 13 months so that he would be eligible for city pension, Mayor Hervey said: 'After all, we only passed the 65-year-old rule to get rid of one employe'. The Mayor did not elaborate on that statement, he did not say who the employe was."

would be subject to the same test as applied to the above statements referring to the city's retirement plan as being the "Mayor's Retirement Plan". Could the Mayor and City Council, at the time of passing the ordinance on retirement, have legally and properly done so if at said time only one employe was to be affected? We think that they could. Whether the plan at the time of the passage was aimed at one, five or fifty employes it would not affect the legality or the propriety of its passage. The very plan itself, as stated in the article complained of, provided that the age limit could be waived under certain circumstances, and such plan does not necessarily require that all employes who have reached the age of 65 be retired. We therefore hold that the statement credited to the Mayor in making his recommendation to the pension board to waive the age limit in the particular case of the particular employe, even though false, is not defamatory, and therefore such statement cannot form the basis of a libelous action.

While we have discussed the objectionable parts of said article separately, it is necessary and proper for us to discuss the article as a whole, as to whether it is defamatory to the appellee in this case. When the article is read as a whole, insofar as it affects the Mayor, what does it actually say, including the headline "Mayor's Retirement Plan Aimed at One Employe"? The situation that gave rise to the article

was a meeting of the Pension Board of the City of El Paso. The Mayor of the City of El Paso appeared before said pension board, recommending or requesting that the Pension Board waive the age limit in the case of one W. J. Adams, a senior inspector in the electric inspection department of the city. Mr. Adams was of the age of 68 years. Apparently as an argument to support his position the Mayor is credited with having made the statement

"After all, we only passed the 65-year-old rule to get rid of one employe."

It appears to us that from the way the above quoted statement is used, it points out to the pension board that it was not mandatory that every employe who had reached the age of 65 would have to be retired, but exceptions could be made, and he was asking for an exception in this particular case.

■ As has been said above, there is much testimony in this case showing ill will and malice toward this appellee generally, but proof of malice is not proof that statements are defamatory. Where false statements are unambiguous they must be defamatory in themselves.

■ Appellee contends that since there are a number of employes who either have been or will be retired under the retirement plan, that the article depicts to the average reader the Mayor as being a despicable, contemptible, dishonest, unjust person, and that as a result thereof he will receive public hatred, contempt, and injury to his reputation. It must be remembered that the court in construing the article as to whether it is defamatory or not cannot consider it from the standpoint of what it means to the Mayor, to the editor of the Herald Post, or even the employes who may be affected by the retirement plan, but we must construe it from the standpoint of the average reader.

■ We have read and re-read many times the article, in the light of and from the standpoint of an average reader, and

it is impossible for us to put any such construction on the article as the appellee contends should be done. To do so would require us to put a very strained interpretation on such article, and the courts have said that a strained construction should not be placed on an alleged false statement in order to make it libelous.

For the reasons stated herein, it is our considered opinion that this case should be reversed and rendered for the appellant.

There are twenty-six other points raised by the appellant. They cover almost the whole law of libel. In view of the disposition we have made of the case we do not consider it necessary that we unduly prolong this opinion by discussing those points. The judgment of the trial court is reversed, and judgment here rendered for the appellant.

McGILL, J., not sitting.