ELAINE HUGHES *vs.* THE NEW ENGLAND NEWSPAPER PUBLISHING COMPANY.

Suffolk.  April 10, 13, 1942. — September 9, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Libel and Slander.  Actionable Tort.*

A newspaper article containing in substance merely a false statement that a named man had committed suicide and a statement that he had lived at a certain place with his wife and children was not reasonably susceptible of a meaning defamatory of his wife and was not a libel of her.

TORT.  Writ in the Superior Court dated June 10, 1941.

A demurrer was sustained by *Collins*, J.  The plaintiff appealed.

*T. L. Mackin*, for the plaintiff.

*H. M. Leen*, (*T. H. Bilodeau* with him,) for the defendant.

RONAN, J.  This is an action of tort for libel.  The plaintiff alleges in the first count, which is the only count with which we are now concerned, that the defendant maliciously and falsely published in its newspaper an article stating that her husband, John S. Hughes, pursuant to an arrangement with two of his business associates, committed suicide, and that Hughes had recently moved from Needham to

Main Street, in Medfield, where he resided with his wife and two children. Although the article made no other reference to the plaintiff, the declaration further alleged that this article was "false, defamatory and libelous to the plaintiff personally and as the widow of said John S. Hughes insofar" as it stated that he had committed suicide. The case is here on appeal from an order of the Superior Court sustaining a demurrer.

A false statement that Hughes ended his own life charged him with the commission of a crime, for self destruction is a criminal offence in this Commonwealth. *Commonwealth* v. *Mink,* 123 Mass. 422. *State* v. *Carney,* 40 Vroom, 478. The publication of that statement gave the plaintiff no cause of action. One who defames the memory of the dead, whatever his responsibility may be under the criminal law, *Commonwealth* v. *Clap,* 4 Mass. 163; *The King* v. *Topham,* 4 T. R. 126; *State* v. *Haffer,* 94 Wash. 136, is not liable civilly to the estate of the decedent or to his relatives. The general rule is that a libel upon the memory of a deceased person that does not directly cast any personal reflection upon his relatives does not give them any right of action, although they may have thereby suffered mental anguish or sustained an impairment of their social standing among a considerable class of respectable people of the community in which they live by the disclosure that they were related to the deceased. *Security Sales Agency* v. *A. S. Abell Co.* 205 Fed. 941. *Turner* v. *Crime Detective,* 34 Fed. Sup. 8. *Skrocki* v. *Stahl,* 14 Cal. App. 1. *Saucer* v. *Giroux,* 54 Cal. App. 732. *Hurst* v. *Goodwin,* 114 Ga. 585. *Bradt* v. *New Nonpareil Co.* 108 Iowa, 449. *Fleagle* v. *Downing,* 183 Iowa, 1300. *Pattison* v. *Gulf Bag Co. Ltd.* 116 La. 963. *Child* v. *Emerson,* 102 Mich. 38. *Rose* v. *Daily Mirror, Inc.* 284 N. Y. 335. *Wellman* v. *Sun Printing & Publishing Association,* 66 Hun, 331. *Sorensen* v. *Balaban,* 11 App. Div. (N. Y.) 164. *Benton* v. *Knoxville News-Sentinel Co.* 174 Tenn. 661. *Houston* v. *Interstate Circuit, Inc.* 132 S. W. (2d) (Texas) 903. *Renfro Drug Co.* v. *Lawson,* 144 S. W. (2d) (Texas) 417. Am. Law Inst. Restatement: Torts, § 560.

The false statement that Hughes committed suicide and

left a widow did not constitute a libel on the latter. That statement, which was entirely directed against Hughes, charged him with having committed suicide in accordance with an agreement with his business associates, and clearly implied that no one else had any connection with his death. His. widow was not charged with any wrongdoing or with any connection with her husband's act. There are instances where the publication of a written statement concerning one person is of such a nature that it imports misconduct upon the part of another. To publish that a third person is an illegitimate child or that he is the husband of a faithless wife or that a married man is single and about to be married imputes immorality to the mother or wife. *Vicars* v. *Worth,* 1 Stra. 471. *Cassidy* v. *Daily Mirror Newspapers, Ltd.* [1929] 2 K. B. 331. *Shelby* v. *Sun Printing & Publishing Association,* 38 Hun, 474. *Hall* v. *Huffman,* 159 Ky. 72. *McDavid* v. *Houston Chronicle Printing Co.* 146 S. W. (Texas) 252. Am. Law Inst. Restatement: Torts, § 564, comment e. This principle is not applicable where, as here, the natural effect of the mere statement that the husband took his own life would not cast any aspersion upon his widow.

The plaintiff, however, contends that she is the person referred to as the widow and that this reference to her, considered with the rest of the article, was a defamation upon her. If the publication was directed against her and tended to expose her to public hatred, contempt and ridicule and to induce an evil opinion of her among a considerable class of right thinking persons or to cause her to be deprived of their confidence and social intercourse, then it would result in injuring her reputation and entitle her to damages. *Lyman* v. *New England Newspaper Publishing Co.* 286 Mass. 258. *Fahy* v. *Melrose Free Press Inc.* 298 Mass. 267. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31. *Themo* v. *New England Newspaper Publishing Co.* 306 Mass. 54.

A copy of the article is incorporated in the declaration and the question raised by the demurrer is whether the words published, taken in their usual and ordinary sense, could be reasonably understood by those who read them as

disparaging the plaintiff's reputation. *Twombly* v. *Monroe*, 136 Mass. 464. *Fay* v. *Harrington*, 176 Mass. 270. *Riceman* v. *Union Indemnity Co.* 278 Mass. 149.

The residence of Hughes was given in the article as Main Street, Medfield, to which, it was stated, he had recently moved "from Needham with his wife and two children." This is no more than a statement that Hughes was a married man living with his family which consisted of his wife and two children. It was descriptive of Hughes and not of those who comprised his household. The mention of them was incidental, for the subject matter of the publication was Hughes and not his family. Although the plaintiff was not named, the mention of her as the wife of Hughes could be found to be sufficient to identify the plaintiff as the person so referred to in the article. *Robinson* v. *Coulter*, 215 Mass. 566. *Brown* v. *Journal Newspaper Co.* 219 Mass. 486. *Northrop* v. *Tibbles*, 215 Fed. 99. *Watson* v. *Detroit Journal Co.* 143 Mich. 430. *Gross* v. *Cantor*, 270 N. Y. 93. *Burkhart* v. *North American Co.* 214 Penn. St. 39. *Schoenfeld* v. *Journal Co.* 204 Wis. 132. Other than this reference to the plaintiff as the wife of Hughes, nothing further was said of her. The article no doubt focused public attention upon the plaintiff and caused her some embarrassment and mental anguish, and while these may be taken into account where the plaintiff has a cause of action, they do not alone furnish any foundation for recovery, because the only basis upon which an action for defamation may be grounded is damage to one's reputation. *Kimmerle* v. *New York Evening Journal, Inc.* 262 N. Y. 99. *Themo* v. *New England Newspaper Publishing Co.* 306 Mass. 54, 57. The only harm that the plaintiff sustained from the publication arose entirely from the statements about her deceased husband and not from anything published concerning her. At most it disclosed merely her marital relationship to one who was falsely accused of having committed suicide. A wife has no cause of action for libel on account of a publication that did nothing more than state that her husband took his own life. *Skrocki* v. *Stahl*, 14 Cal. App. 1. *Sorensen* v. *Balaban*, 11 App. Div. (N. Y.) 164. *Brown* v. *Tribune Association*,

74 App. Div. (N. Y.) 359. *Goldwasser* v. *Jewish Press Publishing Co.* 157 App. Div. (N. Y.) 908. *Birmingham* v. *Daily Mirror, Inc.* 175 Misc. (N. Y.) 372. See *Hargrove* v. *Oklahoma Press Publishing Co.* 130 Okla. 76. Compare *Bradley* v. *Cramer*, 59 Wis. 309.

This case is not ruled by *Merrill* v. *Post Publishing Co.* 197 Mass. 185. The publication in that case was to the effect that the plaintiff was the postmaster in charge of a post office where his sister was employed; that his sister had been arrested for larceny from the mails; and that there were those who believed that she stole in order "that she might help others." Page 193. It was held that the article could be found to have been directed against the plaintiff and his sister; and that to write that one was a brother of a person who had been arrested for larceny might tend to lower his standing in his community. The plaintiff in the case cited was in charge of the post office where the theft occurred by a clerk who was employed there. In the case at bar the article was not aimed at the plaintiff and it did not state, nor was it averred in the declaration, that she had any connection whatever with the death of her husband. Furthermore, it is at least doubtful from the reasoning of the opinion in the *Merrill* case, whether, if the article had stated merely that the clerk had been arrested for larceny and that she had a brother, the latter would have a cause of action. No question was there presented as to the right of a relative to recover for defamation of a deceased person, and the remark in the opinion that a man's standing may be affected by a publication that his parents or ancestors were criminals was unnecessary to the decision. The case has never been cited by this court or, as far as we are aware, by the majority opinion of any court as authority for the proposition that defamation of the memory of a deceased person gives a cause of action to his relatives. The almost unanimous trend of judicial thought is that such a proposition is unsound. Many of the cases are collected in 132 Am. L. R. 888. Compare *Huot* v. *Noiseux*, 2 Queb. Q. B. 521; *Chiniquy* v. *Bégin*, 24 Queb. K. B. 294. The *Merrill* case cannot be employed to extend liability into a

field whose boundaries can hardly be defined with any fair degree of certainty and permit the recovery of damages by relatives, friends and business associates who have been injured by a publication that at most did no more than blacken the memory of a deceased person.

The order sustaining the demurrer is affirmed and judgment must be entered for the defendant. *Keljikian* v. *Star Brewing Co.* 303 Mass. 53. *Swinton* v. *Whitinsville Savings Bank*, 311 Mass. 677.

*So ordered.*