**Mary Ellen GONZALES, Appellant,**

v.

**The TIMES HERALD PRINTING COMPANY, Appellee.**

No. 18339.

Court of Civil Appeals of Texas, Dallas.

May 30, 1974.

Rehearing Denied June 27, 1974.

Robert B. Hershey, Dallas, for appellant.

Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellee.

BATEMAN, Justice.

This is a libel suit in which summary judgment was rendered for appellee, publisher of the Dallas Times Herald. In a single point of error appellant contends the summary judgment evidence was insufficient to negate the existence of genuine issues of material fact. The parties will be designated as they were in the trial court.

Plaintiff alleged that she was libeled and her reputation damaged by defendant's publication of two newspaper articles on successive days. The first reported the discovery of an unidentified, burned body, and noted it had been found in a section of the city where other deaths had occurred in connection with a so-called heroin mini-war. The second article identified the body as that of plaintiff's husband, and gave his home address. It also commented that the detectives declined to speculate on

whether the incident might be tied to a recent series of murders in that section of the city but that at least five Mexican-Americans had been killed as a result of the power struggle then going on over control of heroin supplies coming into Dallas. The only reference to plaintiff appeared in the second article, which stated: "The car, however, was registered to Gonzales, whose wife confirmed him as missing."

Plaintiff alleged that the articles were libelous in that they implied that her husband was involved in the narcotics traffic, and that this implication also implicated her as his wife, damaging her reputation and exposing her and her children to public hatred, contempt and ridicule by pinpointing her as being involved in the heroin mini-war.

Vernon's Tex.Rev.Civ.Stat.Ann. art. 5430 (Vernon 1958) defines "libel" as follows:

A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury. Acts 1901, p. 30.

We are not concerned with the question of whether statements made in the articles concerning the husband were true or false, or whether they libeled him or blackened his memory. All we are concerned with is the question of whether the record before us shows affirmatively that the defendant has carried its burden of showing the absence of any genuine issue as to any material fact and that it was entitled to judgment as a matter of law.

If the publication in question is unambiguous, as we find it to be in this case, it is the duty of the court to determine as a matter of law whether it was libelous. Herald-Post Pub. Co. v. Hervey, 282 S.W. 2d 410, 413 (Tex.Civ.App.—El Paso 1955, writ ref'd n. r. e.).

Assuming, without deciding, that the newspaper articles defamed plaintiff's deceased husband or tended to blacken his memory, we hold that it appears as a matter of law from plaintiff's pleadings and her deposition that the publication of the articles did not create any cause of action in her favor. The following excerpt from 50 Am.Jur.2d Libel and Slander § 320, at 841–42 (1970), correctly states the applicable rule of law:

Although a right of action for damages for defamation of a deceased person existed under the Roman law, and still exists in some jurisdictions which adhere to the civil law, it is established that defamation of a deceased person does not give rise to a right of action at common law in favor of the surviving spouse, family, or relatives who are not defamed. And this is the rule notwithstanding the fact that the commonly accepted definition of libel includes, as one form thereof, publications tending to blacken the memory of the dead.

That this quotation correctly announces the Texas law on the subject is shown by the following excerpt from the opinion in Renfro Drug Co. v. Lawson, 138 Tex. 434, 160 S.W.2d 246, 249 (1942):

All of the authorities bearing directly upon the first question certified, except decisions from Quebec, hold in substance that "the law does not contemplate the offense (defamation of the dead) as causing any special damage to another individual, though related to the deceased, and therefore it cannot be made

the basis for recovery in a civil action". Newell's, The Law of Slander and Libel, 4th Ed., p. 368, sec. 332.

■ We see nothing in either of the articles that could ordinarily be construed to reflect on plaintiff's name, reputation or character. As stated above, the only reference to her in either article was a statement that she had confirmed the fact that her husband was missing. Even if an ordinary reader might have drawn the inference that plaintiff's husband was engaged in the importation or sale of narcotics, nothing in the articles suggests that she was so engaged. Unless she herself was the particular person with reference to whom defamatory statements were made, she has no cause of action. Keys v. Interstate Circuit, Inc., 468 S.W.2d 485 (Tex. papers, Inc. v. Matthews, 161 Tex. 284, Civ.App.—Tyler 1971, writ dism'd); News-339 S.W.2d 890 (1960); 50 Am.Jur.2d Libel and Slander § 143, at 645 (1970). Accord, Rose v. Daily Mirror, Inc., 284 N. Y. 335, 31 N.E.2d 182, rehearing denied, 285 N.Y. 616, 33 N.E.2d 548 (1940), where the newspaper article published by defendant erroneously described the deceased as a self-confessed murderer, and named the plaintiffs as his surviving wife and children, and it was held that no cause of action was stated.

In Hughes v. New England Newspaper Pub. Co., 312 Mass. 178, 43 N.E.2d 657 (1942) the defendant's article erroneously stated that the deceased had committed suicide pursuant to a business arrangement, and noted the deceased had recently moved "from Needham . . . with his wife and two children." The wife brought suit for libel and damage to her reputation, and in affirming the trial court's action in sustaining a general demurrer to her petition the court said, in part, at 658:

The general rule is that a libel upon the memory of a deceased person that does not directly cast any personal reflection upon his relatives does not give them any right of action, although they may have thereby suffered mental anguish or sustained an impairment of their social standing among a considerable class of respectable people of the community in which they live by the disclosure that they were related to the deceased.

In our opinion, the summary judgment was correct, and it is therefore affirmed.