**Mark Melton MOORE, Appellant,**

v.

**CHARLES B. PIERCE FILM ENTERPRISES, INC. et al., Appellees.**

**No. 8704.**

Court of Civil Appeals of Texas, Texarkana.

Sept. 18, 1979.

Rehearing Denied Oct. 23, 1979.

J. Tom Wilson, Keck & Barnes, Dallas, for appellant.

J. R. Hubbard, Hubbard, Patton, Peek, Haltom & Roberts, Texarkana, for appellees.

CORNELIUS, Chief Justice.

Mark Melton Moore appeals from an adverse summary judgment rendered in his suit against Charles B. Pierce, Charles B. Pierce Film Enterprises, Inc., Charles B. Pierce Film Productions, Inc. and American International Pictures, Inc. Moore filed the suit because of the publication of a moving picture entitled "The Town That Dreaded Sundown", which was produced by the defendant, and which involved a series of unsolved murders in Texarkana in the 1940's. It was alleged that Moore's deceased sister, one of the murder victims, was represented in the film by a character known as Emma Lou Cook, who was portrayed as a high school dropout and a woman of loose morals, and that her murder was portrayed in a particularly bloody and gruesome manner offensive to the public decency and in a manner that was not true. It was also asserted that the defendants had " . . . intruded upon Plaintiff's physical and mental solitude and seclusion by bringing back into the public eye a tragic and painful segment of Plaintiff's life that Plaintiff has for many years consciously sought to avoid parading before the public"; and that the defendants had " . . . appropriated private facts and disclosed them publicly, without Plaintiff's permission and in a false light and in a particularly vulgar and patently offensive manner." In other words, Moore was suing for an invasion of privacy. It should be noted that Moore himself was never portrayed or even mentioned in the film. Neither was Moore's sister personally named in the production, nor was she portrayed except insofar as the role of Emma Lou Cook was based on her life and murder. Moore alleged that the resemblance of Emma Lou Cook to his sister was unmistakable to any one familiar with the events and with his family history, and consequently his and his family's reputations had been damaged and an unlawful intrusion had been made upon his peace and solitude.

■ An individual's legal right to privacy began to be recognized in this country with the publication in 1890 of an article by Samuel D. Warren and Louis D. Brandeis, 4 Harv.L.Rev. 193 (1890). As usually defined, the right is said to be the right of an individual to be left alone, to live a life of seclusion, and to be free from unwarranted publicity. *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973). It is generally recognized that the right may be violated by any one of the following acts:

1. Intrusion upon the plaintiff's physical solitude or seclusion.

2. Public disclosure of private facts about the plaintiff.

3. Publicity which places the plaintiff in a false light in the public eye.

4. Appropriation of the plaintiff's name or likeness for the defendant's benefit or advantage.

Prosser, Law of Torts § 112, p. 829 (3rd ed. 1964); Restatement (Second) of Torts, §§ 652B, 652C, 652D, 652E (1977).

Mr. Moore bases his cause of action upon acts described in the first and third categories. However, as the right of privacy is purely personal and terminates upon the death of the person whose privacy is invaded, Mr. Moore can recover in this case only if the law affords him a remedy for the invasion of his own privacy by an injury to his relational interest, i. e., his interest in a deceased relative. The right to such a remedy, where allowed, is referred to as a relational right of privacy.

No state court in Texas has yet decided whether a relational right to privacy will be recognized in this State, but the overwhelming weight of authority in other states is that an action for the invasion of privacy cannot be maintained by a relative of the person concerned, unless that relative is himself brought into unjustifiable publicity. See for example, *Nelson v. Times,* 373 A.L.R.2d 1221 (Me.1977); *Young v. That Was The Week That Was,* 423 F.2d 265 (6th Cir. 1970); *Cordell v. Detective Publications, Inc.,* 419 F.2d 989 (6th Cir. 1969); *Maritote v. Desilu Productions, Inc.,* 345 F.2d 418 (7th Cir.) cert. denied, 382 U.S. 883, 86 S.Ct. 176, 15 L.Ed.2d 124 (1965); *Bradley v. Cowles Magazines, Inc.,* 26 Ill.App.2d 331, 168 N.E.2d 64 (1960); *Kelly v. Johnson Publishing Company,* 160 Cal.App.2d 718, 325 P.2d 659 (1958); *Coverstone v. Davies,* 38 Cal.2d 315, 239 P.2d 876 (1952); *Kelley v. Post Publishing Co.,* 327 Mass. 275, 98 N.E.2d 286 (1951); Prosser, Law of Torts § 112, p. 843 (3rd ed. 1964); Anno., 18 A.L.R.3d 873 (1968). The Restatement takes the same position. Restatement (Second) of Torts § 652I (1977). And the U. S. District Court for the Northern District of Texas, in a diversity action governed by Texas law, has concluded that Texas would follow the majority rule. *Justice v. Belo Broadcasting Corporation,* 472 F.Supp. 145 (N.D.Tex.1979). Indeed, so far as we have been able to determine, only three states by court decision, and three others by legislative enactment, have seen fit to recognize a cause of action for the violation of a relational right of privacy. See *Cox Broadcasting Corporation v. Cohn,* 231 Ga. 60, 200 S.E.2d 127 (1973); *Bazemore v. Savannah Hospital,* 171 Ga. 257, 155 S.E. 194 (1930); *Douglas v. Stokes,* 149 Ky. 506, 149 S.W. 849 (1912); and the comment at page 121 in the opinion of the Alabama Supreme Court in *Smith v. Doss,* 251 Ala. 250, 37 So.2d 118 (1948), and the statutes of Oklahoma, Utah and Virginia referred to in note 66, § 112, p. 843, Prosser, Law of Torts (3rd ed. 1964). Sound policy considerations support the majority rule. The law is rightfully wary of claims for injuries which are purely emotional and where the difficulty of judging the validity of complaints which are essentially subjective makes the danger of spurious actions substantial. Too, it would be difficult to fix the limits of such a right of action, and in the absence of well defined limits the allowance of such an action would, as stated by the court in *Coverstone v. Davies,* supra, at 881:

> " . . . open the courts to persons whose only relation to the asserted wrong is that they are related to the victim of the wrongdoer and were therefore brought unwillingly into the limelight. Every defamation, false imprisonment, and malicious prosecution would then be an actionable invasion of the privacy of the relatives of the victim."

Although the exact question has not previously been addressed by the Texas courts, we do have analogous rulings, as our courts have consistently held that in actions for defamation, only the person about whom the defamatory statements were made can maintain an action for damages as the result of the statements. *Renfro Drug Co. v. Lawson,* 138 Tex. 434, 160 S.W.2d 246 (1942); *Gonzales v. Times Herald Printing Co.,* 513 S.W.2d 124 (Tex.Civ.App.Dallas 1974, no writ); *Keys v. Interstate Circuit, Inc.,* 468 S.W.2d 485 (Tex.Civ.App.Tyler 1971, writ dism'd).

In light of the foregoing, we will follow the majority rule and restrict the right of recovery in cases of this type to the person about whom facts have been wrongfully published, unless the Legislature sees fit to establish a right of action in the relatives of such a person.

The judgment of the trial court is affirmed.

HUTCHINSON, J., not participating.