**Sandra K. RITZMANN, Plaintiff,**

v.

**WEEKLY WORLD NEWS, INC. and Joe West, Defendants.**

**Civ. A. No. 3–84–2247–H.**

United States District Court,
N.D. Texas,
Dallas Division.

May 24, 1985.

Charles J. Quaid, Massingill & Quaid, Dallas, Tex., for plaintiff.

Aubrey M. Daniel, III and Nancy F. Preiss, Williams & Connolly, Washington, D.C., Michael Byrd, Akin Gump Strauss Hauer & Feld, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

This case is before the Court on Defendants' Motion to Dismiss, filed April 2, 1985; Plaintiff's Response, filed April 22, 1985; Defendants' Reply, filed May 3, 1985; and Plaintiff's Reply, filed May 10, 1985.

This action arises from the publication of an article entitled "Marriage Ends in Blaz-

ing Fury" in the February 7, 1984 issue of "Weekly World News", published by Defendant Weekly World News, Inc. Defendant West is the publisher of Weekly World News. The article describes a domestic dispute between Plaintiff Sandra K. Ritzmann and her estranged husband Stephen, in which he scalded her with hot water, beat her, and tried to push her onto the burners of the kitchen stove. After Plaintiff fled the house, her husband set her house ablaze, and perished in the fire.[1] Plaintiff is seeking damages for defamation and invasion of privacy.

### Choice of Law

Texas follows the approach of the Restatement (Second) of Conflict of Laws in analyzing choice of law questions. *Guitierrez v. Collins*, 583 S.W.2d 312 (Tex.1979). That approach, generally speaking, applies the state law having the most significant relationship to each issue. Plaintiff was and is domiciled in Texas. Defendants are domiciled in Florida.

■ With respect to both defamation and invasion of privacy, the state of most significant relationship will usually be the state where the plaintiff was domiciled at the time of publication "if the matter complained of was published in that state". Restatement § 150(2); § 153. Although the conduct causing the alleged injuries arguably took place in Florida, Plaintiff's domicile is Texas and the distribution of Defendants' publication at supermarket check-out counters throughout Texas yield the conclusion that the principal injuries, if any, occurred in Texas. Accordingly, Texas law will govern. *Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084, 1087 (5th Cir. 1984), *cert. denied,* — U.S. ——, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985); *Faloona v. Hustler Magazine, Inc.*, 607 F.Supp. 1341, 1352 (N.D.Tex.1985).

**1.** The article is attached as Appendix A.

**2.** ¶ VII: "Specifically, [the article] leaves in the mind of the reader that a terrible fright and scene occurred thereby distorting the time facts

### The Motion

Defendants seek to dismiss the complaint on the grounds that it fails to state either a cognizable claim for defamation or invasion of privacy. Defendants make much of the assertion that the details reported in their article do not expand at all beyond previous reporting of the incident in the Dallas Morning News, Dallas Times Herald, and Houston Post, which are appended as "Attachments" to Defendants' Motion. Defendants also state that Plaintiff concedes these articles to be true, presumably seizing on a sentence in Plaintiff's Complaint.[2] Regardless of their truth or accuracy, it is improper for the Court to consider matters outside of the pleadings in deciding a motion to dismiss. *See* Rule 12(b), Fed.R. Civ.P.

### First Cause of Action

■ Plaintiff's first cause of action is entitled "Defamation/Slander/Libel". There are no allegations of slander present in the case. The statutory cause of action for libel, article 5430, Tex.Rev.Civ.Stat. ann., displaces all common-law formulations. *McCullagh v. Houston Chronicle Pub. Co.*, 211 F.2d 4 (5th Cir.1954), *cert. denied*, 348 U.S. 827, 75 S.Ct. 44, 99 L.Ed. 652 (1954), reads:

> A libel is a defamation expressed in printing ... tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury.

Defendants seek dismissal of the libel count for failure "to set out the particular defamatory words, or at least their substance and meaning", citing *Murray v.*

which were known to the public at large pursuant to police reports and other newspaper reports printed by local Dallas papers regarding the matter when it appeared two months prior."

*Harris,* 112 S.W.2d 1091, 1094 (Tex.Civ. App.1938). The stringency of pleading requirements is, however, governed by the Federal Rules in actions removed from the state courts. Rule 81(c), Fed.R.Civ.P.; Rule 8(a) (requiring a short and plain statement of the claim).

■ Plaintiff attached a copy of the offending article to her Complaint and states that "the entire article as a whole is false". ¶ VII. Although this assertion seems somewhat incredible and largely unsupportable, it satisfies the notice requirements of Rule 8. *Stabler v. New York Times Co.,* 569 F.Supp. 1131, 1138 (S.D. Tex.1983) (allegation that article is defamatory in its entirety is sufficient).

■ Defendants next argue that Plaintiff's claim that the article is libelous on its face is unsupportable, because the article does not reflect upon Plaintiff's character. If the language of an alleged libel is unambiguous, it is the duty of the court to construe its meaning and determine whether it is libelous. *Merren & Co. v. Belo Corp.,* 228 F.Supp. 515 (N.D.Tex.1964), *aff'd,* 346 F.2d 568 (5th Cir.1965); *Herald-Post Pub. Co. v. Hervey,* 282 S.W.2d 410, 413 (Tex.Civ.App.—El Paso, 1955, writ ref'd n.r.e.). The article is certainly unambiguous. Plaintiff, in her Complaint, states that the article "grossly distorts the events that took place by direct language and innuendo and leaves concern for the reader's mind as to the true facts which occurred. Specifically, it leaves in the mind of the reader that a terrible fright and scene occurred thereby distorting the true facts...." ¶ VII. The damage allegations state that "Plaintiff has endured shame, embarrassment, humiliation, mental pain and anguish. In addition, Plaintiff is and will in the future be seriously injured in her good name and reputation in the community and exposed to hatred, contempt, ridicule, to the general public, as well as her friends and relatives". ¶ IX.

Plaintiff does acknowledge an incident in which "her estranged husband was killed, herself seriously injured, and their personal property destroyed by fire." ¶ IV. The article does attribute certain quotations to Plaintiff, including a statement that the decedent "just went crazy", that she "fought off" the clutches of what the article refers to as "her crazed mate".

■ The Court is of the opinion that these references are not defamatory as a matter of law. Texas courts have repeatedly and unequivocally held that unless the plaintiff herself is the particular person with references to whom defamatory statements were made, she has no cause of action. *Gonzalez v. Times Herald Printing Co.,* 513 S.W.2d 124, 126 (Tex.Civ.App. —Dallas, 1974, no writ), and cases cited therein. In *Gonzalez,* a newspaper reported that Plaintiff's husband's body was found burned and speculated that the death might be related to an ongoing heroin war. The Court found no cause of action belonging to his widow: "Even if an ordinary reader might have drawn the inference that Plaintiff's husband was engaged in the importation or sale of narcotics, nothing in the articles suggest that she was so engaged." *Id.* at 126.

Assuming that all of the statements in the article are false, and that Plaintiff's estranged husband was not "berserk", had not gone "crazy", and did not assault Plaintiff, all of which certainly tends to injure his reputation, nothing at all libelous appears directed to Plaintiff. *Accord Rose v. Daily Mirror, Inc.,* 284 N.Y. 335, 31 N.E.2d 182 (1940), *reh. denied,* 285 N.Y. 616, 33 N.E.2d 548 (1941) (article erroneously described deceased as self-confessed murder).

Plaintiff's specific objection is that the article left in the mind of the reader the occurrence of "a terrible fright and scene". Again, assuming that there was not indeed such a fright and scene, the erroneous reporting to the contrary cannot conceivably be libelous on its face of Plaintiff. Plaintiff was unambiguously characterized as the victim of "a terrible fright and scene"; a marital relation to its alleged perpetrator does not extend a cause of action for libel to her. *Gonzalez, supra.*

*Invasion of Privacy*

In the Second Cause of Action, styled "Invasion of Privacy", Plaintiff amalgamates three of the four forms of the tort of invasion of privacy recognized under Texas law into one. ¶ XIII. The three theories are (1) an unreasonable intrusion upon the seclusion and private affairs of Plaintiff, (2) an unreasonable publicity given to an aspect of Plaintiff's private life and facts to which the public has no genuine concern, and (3) publicity which unreasonably places Plaintiff and the occurrence in a false light. *See Braun v. Flynt,* 726 F.2d 245, 252 (5th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984); *Billings v. Atkinson,* 489 S.W.2d 858 (Tex.1973); *Gill v. Snow,* 644 S.W.2d 222 (Tex.App.— Fort Worth, 1982, no writ). Defendants argue that none of the three theories can support a recovery.

*Unreasonable Intrusion*

■ The Restatement (Second) of Torts § 652B frames this tort as follows:

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

The gravamen of this tort is the intrusion, physically or by the use of the defendant's senses, not the publicity resulting from the intrusion. *Id.* at 379, Comment b. In *Gill, supra,* the Court of Appeals held that the publication of an advertisement about the plaintiff was not the type of invasion of privacy encompassed by the "unreasonable intrusion" tort, because there was no physical invasion or eavesdropping. 644 S.W.2d at 224. There are likewise no such allegations here, and this claim must fail.

*Private Facts*

Under Texas law:

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public.

Restatement (Second) of Torts § 652(d); *Wood, supra,* 736 F.2d at 1089.

■ This section provides for tort liability involving a judgment for damages for publicity given to *true* statements of fact. Restatement at 383. To the extent that the article was wholly false, as alleged, this theory provides no recovery. To the extent the article was true, the facts were not private, as Defendants would then be "merely giving further publicity to information about the plaintiff which is already public". Restatement, comment c; *Virgil v. Time, Inc.,* 527 F.2d 1122, 1125 (9th Cir.1975), *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976); *Faloona, supra,* 607 F.Supp. at 1358–59. Again this theory must be dismissed.

*False Light*

■ Under Texas law:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts ¶ 652(E) (1977); *Braun v. Flynt,* 726 F.2d 245, 252 (5th Cir.1984). As in the defamation context, the court must make a threshold determination of "whether the complained of publication is capable of conveying defamatory or false meaning". *Braun,* 726 F.2d at 253; *Golden Bear Distribution System v. Chase Revel, Inc.,* 708 F.2d 944 (5th Cir.1983). Whether the publication does

actually place the subject in a false light and whether that false light would be highly offensive to a reasonable person are questions of fact. *Rinsley v. Brandt,* 700 F.2d 1304, 1307 (10th Cir.1983).

■ Again, Plaintiff cannot recover for any false depiction of her estranged husband. *Moore v. Charles B. Pierce Film Enterprises,* 589 S.W.2d 489, 490 (Tex.Civ. App.—Texarkana 1979, writ ref'd. n.r.e.). Only the person about whom statements were made can maintain the tort action. *Id.*

■ The false light claim is not coterminous with a defamation action, as Defendants suggest. The interest protected by the false light claim is an individual's interest in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than as she is. It is not, however, necessary to the action that the plaintiff be defamed. It is enough that she is given unreasonable and highly objectionable publicity that attributes to her characteristics, conduct or beliefs that are false, and so is placed before the public in a false position. § 652E, Comment b at 395.

Under this formulation, the Court cannot find that there is no set of facts under which Plaintiff could prove a "false light" claim. For instance, Plaintiff could show that she never stated nor believed that her spouse "just went crazy", or tried to injure her as described, that she found it necessary to fight him off, or that she was found writing in pain on her front lawn. Although these statements are not defamatory, they may indeed be sufficient for a jury to find that they placed Plaintiff in a false light. The context in which the article appears within the publication is also relevant, *Braun,* 726 F.2d at 253–54; *Faloona,* 607 F.Supp. *supra* at 1356, as may be the implication that Plaintiff gave an interview to the publication in question.

Plaintiff should, however, be cautioned that mere inaccuracy in reporting or the fact that publicity was given to a tragic episode in a forum of which she disapproves will not support recovery. It is only when there is such a major misrepresentation of her character, history, activities, or beliefs that serious offense may reasonably be expected to be taken by a reasonable person in her position that there is a cause of action for invasion of privacy. § 625E, Comment c at 396.

Accordingly, the Court is of the opinion that Defendants' Motion to Dismiss should be, and hereby is, GRANTED IN PART and DENIED IN PART. Plaintiff's defamation, unreasonable intrusion and private facts claims are DISMISSED.

SO ORDERED.

APPENDIX A

WEEKLY WORLD NEWS
February 7, 1984

# Marriage ends in blazing fury

After trying to scar the face of his terror-stricken wife with scalding hot water, a berserk hubby torched their fashionable home — then burned to a crisp in the fire.

"He just went crazy," said the horribly-burned spouse, Sandra Ritzmann. "He hit me with anything he could get his hands on. He even tried to push me against the burners on the stove."

The 40-year-old housewife is in a Dallas, Tex., hospital suffering from painful second- and third-degree burns.

Firemen found the blackened body of her estranged hubby, Steve, in the gutted kitchen of their two-story house.

"He was virtually incinerated in the blaze," said a fireman.

Police said the grisly chain of events began when Steve visited his wife to discuss their impending divorce.

"He asked her to put on a pot of water for tea," said Police Sgt. J.A. Wallace. "As the water boiled, so did their tempers."

The couple argued violently for several minutes before Steve grabbed the pot of boiling water and hurled it in the face of his screaming spouse.

Nearly blinded by the water and in excruciating pain, Sandra staggered helplessly around the kitchen, but couldn't escape the clutches of her crazed mate.

"He came up behind me and tried to push my face on the burners of the stove, but I fought him off."

Then she half-crawled, half-walked to the front door and collapsed on the front lawn, writhing in pain.

Neighbors said Steve could be heard inside the house shouting wildly that he was going to burn the place down.

"We didn't take him seriously until a few minutes later when the house seemed to erupt in flames all at once," said a neighbor.