Kelly **FALOONA** and Brandon Faloona, by their next friend, Linda **FREDRICKSON**, Plaintiffs-Appellants,

v.

**HUSTLER MAGAZINE, INC.,** Defendant-Appellee.

No. 85–1359.

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1986. Rehearing and Rehearing En Banc Denied Oct. 14, 1986.

Gregory L. Ceshker, Harold E. Vanberg, Jr., Dallas, Tex., for plaintiffs-appellants.

David H. Donaldson, Jr., Elizabeth A. Crabb, Austin, Tex., for defendant-appellee.

Before THORNBERRY, POLITZ, and RANDALL, Circuit Judges.

## OPINION

POLITZ, Circuit Judge:

Plaintiffs appeal the summary judgment dismissal of their action against Hustler Magazine, Inc., publisher of *Hustler*. The minors Kelly and Brandon Faloona, through their mother, Linda Fredrickson, filed suit to void a photographic release executed by their mother, and for damages for invasion of privacy against Hustler Magazine, Seabury Press and Dr. Erwin J. Haeberle. On the eve of the trial, in a comprehensive and scholarly opinion, the district court granted summary judgment to Hustler Magazine, which was by then the sole remaining defendant. *Faloona by Fredrickson v. Hustler Magazine, Inc.*, 607 F.Supp. 1341 (N.D.Tex.1985). We affirm.

*Background*

The facts are thoroughly reviewed in the district court's opinion, 607 F.Supp. at 1346–52, and we only summarize the salient points.

In 1971 Fredrickson separated from her husband, Gerald Faloona, and took their two children, Kelly and Brandon, then ages five and three, respectively, from their Dallas, Texas residence to San Francisco, California. Later that year she secured a final divorce decree from a California court. That decree awarded her the care, custody, and control of the minor children.

In September 1972, while working as a psychiatric nurse, Fredrickson attended a course on "sexual attitude restructure" at the National Sex Forum, an institute on human sexuality in San Francisco. Shortly thereafter, Dr. Laird Sutton, a Methodist minister who headed the audio-visual department of the National Sex Forum, asked Fredrickson if she and her children would pose for nude photographs to be used in *The Sex Atlas*, a textbook on human sexuality then being written by Dr. Erwin J. Haeberle, a sexologist affiliated with the Forum. Fredrickson agreed, after discussing the matter with the children and their father. In late 1972 Sutton took a series of photographs at the studio in his home. Kelly and Brandon were then six and four, respectively. Fredrickson was paid $100 for the photographs. The National Sex Forum did not use these photographs. Fredrickson and Gerald Faloona privately displayed them.

In mid–1973, after Fredrickson began working for the National Sex Forum, Sutton took more photographs. No compensation was paid. Fredrickson executed two identical photographic release forms for Sutton, one for herself and the other on behalf of her two children. *See* 607 F.Supp. at 1348 & n. 21. The forms, which were read and fully understood by Fredrickson, provided in pertinent part:

That one of the terms of employment was that [Sutton] was free to use the photographs in any manner [he] deemed fit, whether by sale to the general public, sale to a limited audience, or no sale at all.

That [Sutton] has made no representation to [Fredrickson] as to distribution of the photographic representation, or any use [Sutton] may make of said representation.

That [Fredrickson] retains no rights whatsoever to the photographic representation or to the literary or artistic product in which the photographic representation is an integral part, and hereby, for a valuable consideration, releases and indemnifies [Sutton] from and against any and all claims [Fredrickson] may make in the future against [Sutton] or [his] assigns resulting from said employment.

The Seabury Press purchased the rights of Dr. Haeberle and the National Sex Forum and published *The Sex Atlas* in 1977. The text contained full-page photographs of Kelly and Brandon, a double page photograph of Brandon, and eleven small photographs of the two children together.

Also in 1977, the National Sex Forum published a book entitled *Meditations on the Gift of Sexuality*, which contained a nude photograph of Fredrickson and the two minors. Prior to publication, Sutton sought and secured Fredrickson's permission to publish the photo, although Fredrickson apparently was unaware of the particular photo he planned to use. After publication of *Meditations*, Fredrickson informed the author, a Methodist minister and another of the National Sex Forum officials, that the Forum should not use any more photographs of her or the children without first contacting her.

In December 1977 Fredrickson and the two children departed San Francisco and returned to Dallas where Gerald Faloona had continued to reside.

In the summer of 1978, *Hustler* became interested in publishing a book review of *Meditations* and an excerpt from *The Sex Atlas*. It purchased from Seabury Press the right to publish a 5,000–word excerpt and accompanying photographs from *The Sex Atlas*. The November 1978 issue con-

tained a two-page book review of *Meditations*, with six photographs from the book, including the picture of Fredrickson and her two children. In that same issue, *Hustler* announced that an excerpt and photographs from *The Sex Atlas* would be published in its December 1978 issue. Plaintiffs learned that their picture was in the November issue, and of the plans for the December issue, when a friend showed Fredrickson a copy of the November issue of *Hustler*. On October 25, 1978, Fredrickson's attorney wrote *Hustler* and demanded that no photographs accompany *The Sex Atlas* excerpts. The hour was late; the December issue was already off the presses and was mailed two days later.

*The Sex Atlas* excerpt was illustrated with ten photographs from the book, including one of the small photographs of Kelly and Brandon. In that picture they are standing next to each other. Brandon, facing forward, appears to be walking towards the photographer. Kelly stands facing her brother.

In 1979 Fredrickson, as the minors' next friend, filed the instant suit against *Hustler*, Seabury Press, and Haeberle, seeking for each $2.5 million in actual damages and $7.5 million in punitive damages. In addition to damages, the complaint seeks to void the photographer's release. During ensuing proceedings, Seabury Press and Haeberle were dismissed from the suit, leaving *Hustler* the only defendant as the matter neared trial.

### Analysis

#### Choice of Law

At the threshold in this diversity jurisdiction case, we must determine applicable law by applying Texas choice-of-law rubrics. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed.2d 1477 (1941); *Atlantic Mutual Ins. Co. v. Truck Ins. Exchange*, 797 F.2d 1288 (5th Cir.1986). Doing so, we agree with the district court that Texas law governs the invasion of privacy issue. We disagree with the district court, however, and conclude that California law should be used to

determine the validity of the photographer's release.

Where the parties have not agreed to the contrary, in contract cases Texas has adopted the "most significant relationship" test of Section 6 of the *Restatement (Second) of Contracts* (1971). *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). In such instances,

the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Restatement (Second) of Conflicts of Law* § 188(2). The capacity of a party to contract is determined under the same principles. *Restatement (Second) of Conflicts of Law* § 198. *See generally* Comment, *Texas Contract Choice of Law Rules After Duncan v. Cessna Aircraft Company*, 36 Baylor L.Rev. 491 (1984).

■ We are persuaded that as to the release issue the relevant factors predominate in favor of the application of California law. The contract was negotiated there, executed there, to be performed there, by resident Californians. In addition, Fredrickson was empowered to act on behalf of the minors by virtue of the laws of California and the divorce decree by a California court which granted her the care, custody, and control of the minors. At the time of the execution of the release, at the time of publication of the *Atlas* and *Meditations*, and until the children returned to Texas sometime thereafter, the California court retained judicial oversight of the minors.

■ As to the claims for false light invasion of privacy, we agree with the district court that Texas law is applicable under §§ 6, 145, and 153 of the *Second Restatement, see Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979), for the reasons it stated. 607 F.Supp. at 1352 *(citing Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084 (5th Cir. 1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985)); *accord Ritzmann v. Weekly World News, Inc.,* 614 F.Supp. 1336 (N.D.Tex.1985).

*Standard of Review*

Summary judgment is appropriate where the material facts are not disputed and the decision turns on purely legal considerations. Fed.R.Civ.P. 56; *Fontenot v. Upjohn Co.,* 780 F.2d 1190 (5th Cir.1986). The moving party must demonstrate by competent evidence that no genuine issue of material fact exists. *Id.; Galindo v. Precision American Corp.,* 754 F.2d 1212 (5th Cir.1985). In determining whether a genuine issue of material fact exists, the court must draw all reasonable inferences most favorable to the party opposing the motion. *Harrison v. Byrd,* 765 F.2d 501 (5th Cir. 1985); *Southmark Properties v. Charles House Corp.,* 742 F.2d 862 (5th Cir.1984). *See generally Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 250–55, 91 L.Ed.2d 202 (1986).

Since the issue of the validity of the release involves the application of California law to undisputed facts, it is ripe for summary adjudication. Likewise for the invasion of privacy claim. Under Texas law, the court must make the initial legal determination whether the photographs are "capable of conveying defamatory or false meaning...." *Braun v. Flynt,* 726 F.2d 245, 253 (5th Cir.), *reh'g en banc denied,* 731 F.2d 1205, *cert. denied sub nom. Chic Magazine, Inc. v. Braun,* 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984). The invasion of privacy claim becomes a jury issue only after the court concludes that a false meaning reasonably may exist. *Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.,* 708 F.2d 944 (5th Cir.1983) (applying Texas law). In resolving this question, we must consider "the effect the [photographs may have] on the mind of the 'ordinary reader.'" 708 F.2d at 948 (citations omitted). A reversal and remand for trial is in order only if we find that the effect of the photographs on the ordinary reader is at least ambiguous.

Both issues, therefore, were before the trial court as purely legal questions. They are before this court for a *de novo* review in that same posture. *See Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

*Validity of the Release*

■ Plaintiffs' initial hurdle is the photographic release their mother gave to Sutton. Plaintiffs vigorously advance two arguments in their effort to void that release. They urge first that California law permits them to disaffirm the release at any time; second, they contend that even if California law does not directly dispose of the validity issue, we should require, as a matter of California law, judicial approval of any photographic release before the nude photograph of a child may be published.[1]

In rejecting plaintiffs' claims, and although it concluded that Texas law was to be applied to the release-validity issue, the district court, in its measured and careful manner, also considered California law and found the release equally valid thereunder. 607 F.Supp. at 1355. In doing so the court referred to Section 3344 of the California Civil Code, which provides:

> Any person who knowingly uses another's name, photograph, or likeness ... without such person's prior consent, or in the case of a minor, the consent of his parent or legal guardian, shall be liable

---

1. We emphasize, as did the district court, that the plaintiffs' photographs are not child pornography within the definition of *New York v. Ferber,* 458 U.S. 747, 764, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982) (emphasis in original) (category of child pornography is "limited to works that *visually* depict sexual conduct by children ...."). Our discussion is limited strictly to the instant situation.

for any damages sustained by the person or persons injured as a result thereof....

The district court suggested that this provision codified the common law of California. Plaintiffs maintain that in so concluding the district court erred.

We agree with plaintiffs that § 3344 does not codify California's common law; rather, it augments it. *Lugosi v. Universal Pictures, Inc.*, 25 Cal.3d 813, 160 Cal. Rptr. 323, 603 P.2d 425 (1979). As noted by the district court, § 3344 provides a source of guidance on California law, albeit not dispositive. We accept it as such, mindful that it applies directly to commercial misappropriation and only inferentially to false light invasion of privacy.

Plaintiffs invite our attention to numerous California decisions allowing minors to void contracts they executed, requiring judicial approval of minors' claims, and voiding parental consent terminating or compromising minors' claims. No case similar to that at bar is cited, nor has our independent research found any.

■ Plaintiffs rely heavily on California cases holding that a chose in action is a child's personal property, *Carver v. Ferguson*, 254 P.2d 44 (Cal.App.1953), and cannot be released by a parent. *E.g., Ruddock v. Ohls*, 91 Cal.App.3d 271, 154 Cal.Rptr. 87 (1979); *State of California v. Superior Court*, 86 Cal.App.3d 475, 150 Cal.Rptr. 308 (1978). The children had no chose in action against *Hustler* or anyone else when the release was signed. It cannot therefore be gainsaid that their mother did not release a chose in action by executing the photographic release. Plaintiffs' reliance on these authorities is inapt. So too is their reliance on the established rule that a minor may void a contract executed during minority. The instant release was not signed by the minors.

We find no dispositive statutory law, common law rule, or judicial expression disposing of plaintiffs' contentions. In such a situation it is entirely appropriate for the court to refer to the body of California law for guidance as to that state's policy and, based thereon, to make an *Erie*-prediction as to how the California courts would resolve the issue. The district court so approached the matter. It relied on § 3344 for guidance. We do likewise. This statutory provision recognizes the authority of parents to consent to the photographing of their children.

■ Our attention has been invited to no California law, and we independently have found none, which suggests that the court should be involved in the authorizing of photographs of minors, depending on the publication in which the photographs are destined to appear. We are therefore unwilling to pronounce, as urged by plaintiffs, that California law requires judicial approval of photographic releases for use of minors' photographs in a magazine such as *Hustler*. We need not and do not address whether such approval might be required, or whether parental consent could ever be relied on, for the taking and publishing of photographs defined as pornographic by *Ferber*. We conclude that the release given by Fredrickson was valid when given and valid when used.

### Invasion of Privacy

As formulated by Dean Prosser, refined by the *Restatement (Second) of Torts* (1976), and adopted by Texas, the tort of invasion of the right of privacy is composed of four distinct causes of action. See *Wood v. Hustler Magazine, Inc.; Braun v. Flynt*. Plaintiffs argue that their claims fall under three of these four causes of action: disclosure of private facts, commercial misappropriation, and placing of plaintiffs in a false light.

Finding that plaintiffs are not entitled to trial on any of these claims, we need not determine whether the release precludes their invasion of privacy action under Texas law. See *Wood*, 736 F.2d at 1089 n. 1; *compare Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128 (7th Cir.1985), *cert.*

*denied,* —— U.S. ——, 106 S.Ct. 1489, 89 L.Ed.2d 892 (1986).[2]

■ Plaintiffs argue that the publication of their photographs with the book review of *Meditations* and along with the excerpt from *The Sex Atlas,* tortiously discloses private facts by giving "publicity to a matter concerning [their] private [lives]" which "is not a legitimate concern to the public" in a manner that "would be highly offensive to a reasonable person." *Restatement (Second) of Torts* § 652D. Plaintiffs argue that because the context in which their photographs appeared is highly offensive to a reasonable person, and because the review and excerpt could have been published without the photographs, the tort proscribed by § 652D was committed. Plaintiffs ignore the obvious, succinctly stated by the district court: the tortious disclosure of private facts "applies only to *private* facts." 607 F.Supp. at 1359 (emphasis in original) (*citing* comment c to § 652D). Since the photographs printed in *Hustler* had already been widely published elsewhere, *Hustler* revealed no *private* facts.

Plaintiffs next contend that *Hustler* misappropriated their likeness for commercial advantage. This claim is rejected for the reasons given by the district court. 607 F.Supp. at 1360.

Finally, plaintiffs contend that the publication of the photographs in *Hustler* was a tortious invasion of their privacy because it placed them "before the public in a false light." *Restatement (Second) of Torts* § 652E. Plaintiffs argue that the publication of their nude photographs in *Hustler* insinuates that they are willing to appear naked in *Hustler* and that they endorse and support the magazine.

The law of false light invasion of privacy has recently been exhaustively canvassed by our Seventh Circuit colleagues in *Douglass v. Hustler Magazine, Inc.,* 769 F.2d 1128 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1489, 89 L.Ed.2d 892 (1986). We have reviewed Texas law on the subject in both *Wood* and *Braun.* Plaintiffs contend that because the context in which the pictures appeared is critical to the determination whether they have been placed in a false light, the district court erred in granting summary judgment on this claim. Plaintiffs maintain that the relevant context in which to review their false light claim is the entire issue of *Hustler.* The district court reviewed plaintiffs' photographs within the confines of the book review and the excerpt in which they appeared.

As we earlier noted, the initial decision whether the photographs may be taken as portraying plaintiffs in a false light is exclusively for the court. Any uncertainty in this initial step should be resolved in favor of the plaintiffs. Generally, the first step will require a review of the entire magazine to place the alleged false light invasion of privacy in perspective. Thus it was in *Douglass,* where plaintiff appeared in a nude photo-spread in *Hustler.* While we were primarily concerned in *Wood* with plaintiff's failure to consent, we did review the false light claim, focusing on the "nature of the material published in the Beaver Hunt section" of *Hustler.* 736 F.2d at 1092. In *Braun* we required that the entire magazine, *Chic,* a sister publication of *Hustler,* be introduced in evidence to allow the jury to determine the context of the alleged false light invasion of privacy. As the court *a quo* astutely observed, however, our inquiry surrounding the context within which the photograph there appeared was focused on the "Chic Thrills" section of *Chic* in which it was published. We did not evaluate the entire magazine. *See* 607 F.Supp. at 1356–57 (*discussing Braun,* 726 F.2d at 247).

---

**2.** Because of our affirmance of the district court's finding that plaintiffs cannot maintain their invasion of privacy claim as a matter of law, we do not reach the serious first amendment issue inherent in attaching liability to the republication of photographs in a book review, or in an authorized excerpt from a publication in which the photographs appeared consensually.

Reviewing the context in which plaintiffs' photographs appeared in *Hustler*, carefully described by the district court, 607 F.Supp. at 1350–51 & 1357–58, we agree with the trial judge that no reasonable person could consider the photographs as indicating plaintiffs' approval of *Hustler*, or that they were willing to pose nude for *Hustler*. It is obvious that the photographs were reproductions from the books being reviewed or excerpted. No tie to *Hustler* is claimed or suggested. It is this sharp definition of context which distinguishes this case from *Douglass*, *Wood*, and *Braun*. So viewed, as a matter of law the instant pictures are not offensive, albeit the issues of *Hustler*, as a whole, are manifestly offensive. The district court correctly found that plaintiffs were not entitled to submit their false light invasion of privacy claims to the jury.

For these reasons, the judgment of the district court dismissing plaintiffs' claims is AFFIRMED.