**Ivan C. JUSTICE and Vesper D. Justice, Plaintiffs,**

**v.**

**BELO BROADCASTING CORPORA-TION, d/b/a WFAA–Television, and Dennis Troute, Defendants.**

Civ. A. No. 3–78–0498–D.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 17, 1979.

Paul W. Pearson, Dallas, Tex., for plaintiffs.

John H. McElhaney, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Comes now the defendants in the above-styled cause and move to dismiss this action pursuant to Rules 12(b)(6) and 56 Fed.R. Civ.P. Having reviewed the briefs submitted by the parties, the court is of the opinion that the motion should be granted.

### I.  Facts

For purposes of this motion, the following statement of facts is drawn entirely from plaintiffs' complaint, and the allegations of such complaint are accepted as true. On or about July 11, 1977, plaintiffs' son, Ivan M. Justice ("Justice"), was abducted along with his employer, Richard Lamport ("Lamport"). These men were later found murdered. On or about August 8, 1977, defendant Belo Broadcasting Corporation, d/b/a WFAA–Television ("WFAA"), as the broadcasting source and defendant Dennis Troute as the newscaster, without plaintiffs' prior knowledge or consent, broadcasted a news story concerning the death of Justice and Lamport. This broadcast purported to describe the circumstances surrounding the deaths of the two individuals, but the broadcast contained false information about the plaintiffs' son, that is, WFAA broadcasted the following remarks about the relationship supposedly existing between Justice and his employer, Lamport, with whom he was found murdered:

Investigators are quoted as saying that they believe the two had a homosexual relationship.[1]

Plaintiffs allege that as a result of the false information concerning the homosexual relationship between Lamport and their son, Justice, they have been subjected to humiliation and ridicule for which they claim relief for invasion of their privacy in the amount of $100,000 actual damages and $100,000 punitive damages. WFAA and Troute have moved to dismiss this diversity action on the basis that no cause of action for an invasion of the privacy of the relatives of a deceased person exists under Texas law.

### II.  Discussion

This is a diversity case governed by Texas law. Unfortunately, no Texas case has been presented with the issue that now confronts this court. In fact, Texas has only recently begun to recognize any cause of action for invasion of the right of privacy, *Billings v. Atkinson,* 489 S.W.2d 858 (Tex.1973); *see also Industrial Foundation of the South v. Texas Industrial Accident Board,* 540 S.W.2d 668 (Tex.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977); *Southwestern Bell Tel. Co. v. Ashley,* 563 S.W.2d 637 (Tex.Civ.App.—Eastland 1978, writ ref'd n. r. e.); *Gonzales v. Southwestern Bell Tel. Co.,* 555 S.W.2d 219 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Kimbrough v. Coca-Cola USA,* 521 S.W.2d 719 (Tex.Civ.App.—Eastland 1975, writ ref'd n. r. e.); *Cullum v. Government Employees Financial Corp.,* 517 S.W.2d 317 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.). Having reviewed the above cited cases, the court believes that Texas has or will recognize all four categories of the tort of invasion of privacy, *see Industrial Foundation of the South v. Texas Industrial Accident Board,* 540 S.W.2d at 682. The four categories are: (1) Appropriation, *i. e.,* commercial exploitation of the property value of one's name or likeness; (2) Intrusion, *i. e.,* invading plaintiffs' physical solitude or seclusion; (3) Public Disclosure of Private Facts; and (4) False Light in the Public

---

1. It is undisputed that the broadcast made no direct reference to the plaintiffs, but was only directed at plaintiffs' son and Lamport.

Eye, *i. e.*, a privacy theory analogous to the law of defamation. *W. Prosser, Law of Torts* 804–14 (4th ed. 1971). In the present case, plaintiffs' action could fall within either of the latter two categories.

Under at least three of the categories, the right of privacy is considered personal in nature. The Restatement of Torts 2d provides that:

> Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded.
>
> *Comment*
>
> a. The right protected by the action for invasion of privacy is a personal right, peculiar to the individual whose privacy is invaded. The cause of action is not assignable, and it cannot be maintained by other persons such as members of the individual's family, unless their own privacy is invaded along with his.

Restatement (Second) of Torts § 652I (1977); *see also* W. Prosser, *supra*, at 814–15.[2] Under the majority view, the deceased's relatives may not maintain an action for invasion of privacy, either based on their own privacy interests or as a representative for the deceased,[3] where the alleged invasion was directed primarily at the deceased, *see Young v. That Was The Week That Was*, 423 F.2d 265 (6th Cir. 1970); *Cordell v. Detective Publications, Inc.*, 419 F.2d 989 (6th Cir. 1969); *Maritote v. Desilu Productions, Inc.*, 345 F.2d 418 (7th Cir.) *cert. denied*, 382 U.S. 883, 86 S.Ct. 176, 15 L.Ed.2d 124 (1965); *Gruschus v. Curtis Publishing Co.*, 342 F.2d 775 (10th Cir. 1965); *Santiesteban v. Goodyear Tire & Rubber Co.*, 306 F.2d 9 (5th Cir. 1962); *Starrels v. Commissioner*, 304 F.2d 574 (9th Cir. 1962); *Meeropol v. Nizer*, 381 F.Supp. 29 (S.D.N.Y.

1974), *aff'd*, 560 F.2d 1061 (2d Cir. 1977); *Nelson v. Maine Times*, 373 A.2d 1221 (Me. 1977); *Hendrickson v. California Newspapers, Inc.*, 48 Cal.App.3d 59, 121 Cal.Rptr. 429 (Ct.App.1975); *see also* Annot. 18 A.L. R.3d 873 (1968). In *Cordell*, for example, a mother brought an action for invasion of privacy allegedly caused by the defendant's publication of a sensational account of her daughter's murder. The court refused to allow the mother to maintain the privacy action. It is also relevant to note that in *Cordell*, as well as in *Santiesteban* and *Gruschus*, the courts were presented with the issue raised in the present case without the benefit of state decisional or statutory law on the subject. In all three cases, the courts decided that the respective states would apply the majority rule.

There are cases which support the minority view that the deceased relatives may recover for the invasion of their own privacy interests, most notably the jurisdiction of Georgia, *see Cox Broadcasting Corp. v. Cohn*, 231 Ga. 60, 200 S.E.2d 127 (1973), *rev'd on other grounds*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *see also* Annot., *supra*, at 881–82. These decisions have a certain logic which some law review commentaries believe ought to be encouraged by the courts, *see, e. g.,* Comment, *Why Not A Relational Right of Privacy?— Or Right of Property?*, 42 U.M.K.C.L.Rev. 175 (1973). Admittedly, some of the decisions under the majority view have failed to properly delineate the different privacy interests of the deceased and his relatives. In other words, the relatives of the deceased may have their own privacy interests which are invaded by a broadcast or publication concerning the deceased, even though such broadcast or publication makes only inci-

---

**2.** In a note on the *Billings v. Atkinson* case, the student writer states:

> Because the right of privacy is as a general rule personal in nature, the plaintiff must show an invasion of his own privacy before the recovery is allowed. The *Billings* case suggests that Texas courts are likely to reach the same conclusion, and other traditional tort concepts compel the same holding.

Note, A New Chapter in Texas Tort Law—The Right of Privacy, 10 Houst.L.Rev. 1176, 1180 (1973).

**3.** No question is raised in this case concerning the possible survival of the son's cause of action since the action for invasion of privacy could not have accrued prior to his death, *see* Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1958). The alleged broadcast occurred after the son was found murdered.

dental or no reference to the relatives. This is not to say that the majority view has no merit. Certain policies have been identified by the courts in support of the majority rule. First, the law is wary of actions for injury which is purely emotional; the danger of spurious claims is too great, *see Cordell v. Detective Publications, Inc.,* 419 F.2d at 991.[4] A major problem is also defining the boundaries of the cause of action brought by a person not referred to or named in the publication or broadcast. In *Nelson v. Maine Times,* 373 A.2d at 1221, the court stated:

> Section 652I is in accord with general decisional law which holds this tort to be purely personal. In the context of this particular tort courts, being wary of spurious claims or those purely emotional in character have refused to recognize such actions. Additionally, if actions for violating the right of privacy were allowed by other than the person directly involved, fixing their boundaries and parameters would become an almost impossible task. For example, within what degree of relationship, if any, must a prospective plaintiff be? Might not a very close friend have as serious or emotional reaction as a mother or father? The consensus seems to be that limiting the action to the person directly involved is a sounder judicial policy. We agree. See *Cordell v. Detective Publications, Inc.,* 419 F.2d 989 (6th Cir. 1969); *Kelley v. Post Publishing Co.,* 327 Mass. 275, 98 N.E.2d 286, 287 (1951).

*Id.* at 1225. Other courts have stated that the decision should be left to state legislatures, *Maritote v. Desilu Productions, Inc.,* 345 F.2d at 420, and some states have provided for, by statute, a cause of action to be maintained by the relatives of a deceased who is referred to in a publication, *see W. Prosser, supra,* at 815. Finally, some courts have expressed concern over double recoveries, *see Santiesteban v. Goodyear Tire &*

*Rubber Co.,* 306 F.2d at 12, although that problem is not presented in this case.

■ Alternatively, an analogy can be made to defamation cases, *see Gruschus v. Curtis Publishing Co.,* 342 F.2d at 776; *Santiesteban v. Goodyear Tire & Rubber Co.,* 306 F.2d at 12. Under Texas law, the plaintiffs could not recover for libel or slander under the facts presented in this case. No cause of action for defamation could arise in favor of the parents who were not identified in any way in the news report made the subject of the complaint, *see Gonzales v. Times Herald Printing Co.,* 513 S.W.2d 124 (Tex.Civ.App.—Dallas 1974, no writ); *Keys v. Interstate Circuit, Inc.,* 468 S.W.2d 485 (Tex.Civ.App.—Tyler 1971, writ dism'd). A libel upon the memory of the deceased person that does not directly cast any personal reflection upon his relatives does not give them any right of action, *see Renfro Drug Co. v. Lawson,* 138 Tex. 434, 160 S.W.2d 246 (Tex.Comm.App.1942, opinion adopted). The defamation cases are, however, not directly on point since defamation is concerned with the different interest of reputation.

■ In summary, the court believes that the majority rule should be applicable under Texas law. Therefore, the plaintiffs cannot maintain this action for invasion of their right of privacy where the defendant's broadcast makes no reference to them. They likewise cannot maintain an action for invasion of their son's right of privacy since the right is personal. The court recognizes that the minority view has a certain theoretical support but also believes that the majority position is not irrational. The defamation law of Texas also provides some analogy for determining the proper approach under Texas law with respect to privacy actions.

Accordingly, it is therefore ORDERED that defendants' motion to dismiss be granted, and this action is, therefore, dismissed with prejudice.

---

4. *Cordell* also rebuts plaintiffs' argument that "for every wrong, there must be a right." In *Cordell,* the court interpreting a case applying the minority rule stated that such case was erroneous since its interpretation appeared "to rest on the assumption that for every emotional injury there must be a remedy—an assumption not generally accepted in the law of torts." 419 F.2d at 989 n.3.