902 So.2d 58 (2004)
Eric V. LANGHAM and Cynthia Langham, individually and on behalf of their minor son
v.
James WAMPOL.
2030322.
Court of Civil Appeals of Alabama.
December 3, 2004.
*61 Mark N. Chambless and Michael A. Griggs of Chambless & Math, P.C., Montgomery, for appellants.
Submitted on appellants' brief only.
PER CURIAM.
Eric V. Langham and Cynthia Langham, individually and on behalf of their minor son, sued James Wampol, alleging malicious prosecution. The trial court entered a summary judgment in favor of Wampol. The Langhams appeal. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
An appellate court reviews a summary judgment by the same standard the trial court uses in determining whether to grant a summary-judgment motion. Pryor v. Brown & Root USA, Inc., 674 So.2d 45, 47 (Ala.1995); Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). A summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The movant has the burden of making a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). If the moving party makes that prima facie showing, then the burden shifts to the nonmoving party, who then has the burden of presenting substantial evidence creating a genuine issue of material fact. Id. In determining whether the evidence creates a genuine issue of material fact, this Court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314 (Ala.1993). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
On May 11, 2002, Wampol signed an "Alabama Uniform Incident/Offense Report" ("the incident report"). In the incident report, Wampol alleged that the Langhams' son and another juvenile offender had broken into Wampol's storage shed and had removed a pair of rubber boots from the shed and then left the boots outside. Wampol stated that during the break-in the electricity to the shed was turned off and certain items in the refrigerator that was located in the shed were ruined. A statement from a neighbor of Wampol's indicated that the neighbor had seen the two juveniles enter Wampol's backyard. The Langhams' son was prosecuted as a juvenile, and, according to the Langhams, a judgment was entered in their son's favor in the juvenile court.
In their complaint alleging malicious prosecution, the Langhams sought $10,000 in damages for unnecessary legal fees, mental anguish, and loss of reputation. The Langhams filed a motion in limine seeking to exclude their son's juvenile records from evidence. Wampol filed a motion to strike the Langhams' individual claims on the ground that the Langhams lacked standing to bring a complaint alleging malicious *62 prosecution. Wampol also objected to the Langhams' motion in limine. Wampol notified the court of his intent to seek attorney fees pursuant to the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala.Code 1975 ("the ALAA"). Subsequently, Wampol filed a motion for a summary judgment along with a copy of the incident report. In response to Wampol's summary-judgment motion, the Langhams and their son filed affidavits. Following a hearing, the trial court entered a summary judgment in favor of Wampol and made that judgment final pursuant to Rule 54(b), Ala. R. Civ. P. Wampol then filed a motion for an award of attorney fees. The Langhams responded to the motion, arguing that the trial court had lost jurisdiction to award attorney fees. They also filed a Rule 59, Ala. R. Civ. P., motion, which the trial court denied. Subsequently, the trial court held a hearing on Wampol's attorney-fee motion and entered an order awarding Wampol $2,500 in attorney fees.
Although it is clear that the Langhams have standing to bring a malicious-prosecution action on behalf of their minor son, there is a question whether they have standing to bring that claim in their individual capacities. "Standing, like jurisdiction, is necessary for any valid legal action." Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d 252, 253 (Ala.1996).
"The United States Supreme Court has established that the question of standing turns upon whether the litigant is entitled to have the court decide the merits of the dispute. Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing imparts justiciability to the issues raised and is the threshold issue of every federal case. Warth. Likewise, in cases brought in state court, the machinery of the court is not set into motion unless the plaintiff first alleges his right to bring suit to recover for a redressable injury. Ex parte Izundu, 568 So.2d 771 (Ala.1990). From these rules of law, it is axiomatic that a party who lacks standing cannot be granted relief upon his cause."
Cassady v. Claiborne, 590 So.2d 339, 341 (Ala.Civ.App.1991). "`To say that a person has standing is to say that that person is a proper party to bring the action.'" Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., 881 So.2d 1013, 1019 (Ala.2003)(quoting Doremus, 686 So.2d at 253). "Standing ... turns on `whether the party has been injured in fact and whether the injury is to a legally protected right.'" State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1027 (Ala.1999)(quoting Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998)(Kourlis, J., dissenting))(emphasis omitted). The dispositive issue here is whether the Langhams, as individuals, have suffered an injury to a legally protected right.
The essence of the wrong committed in the malicious prosecution on a criminal charge is the institution of the prosecution maliciously and without probable cause, leading in due course to an arrest. Ladd v. Townsell, 38 Ala.App. 181, 79 So.2d 709 (1955). The Langhams lack standing to bring a suit for their individual claims of malicious prosecution because they were not the subject of the allegedly malicious prosecution. Although the Langhams may bring an action on behalf of their minor son, they have no cause of action in their own right. Alabama law does not provide to the parents of a maliciously prosecuted child an individual cause of action for malicious prosecution. In other words, Alabama law has not conferred standing upon the parents of a maliciously prosecuted child allowing them to recover damages in their own right. The *63 courts of this state have not addressed this issue; however, other courts have addressed a parent's right to bring an individual action when their child has been maliciously prosecuted. See Downtown Grill, Inc. v. Connell, 721 So.2d 1113 (Miss.1998)(parents were not the proper parties to bring an action in their individual capacities alleging malicious prosecution of their child who was arrested for forgery); Rushing v. Bosse, 652 So.2d 869 (Fla.Dist.Ct.App.1995)(grandparents who were not the subject of the judicial proceeding could not maintain a malicious-prosecution claim in their individual capacities); see also Lambert v. Garlo, 19 Ohio App.3d 295, 484 N.E.2d 260 (1985)(trial court properly dismissed the individual claims of parents and a brother of a person who was allegedly defamed because the publication did not concern them); Justice v. Belo Broad. Corp., 472 F.Supp. 145 (N.D.Tex.1979)(parents could not maintain an individual action alleging libel, slander, or invasion of privacy against a television station where the parents were not identified in the news report that falsely reported that their son had had a homosexual relationship with his employer).[1]
"`When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.' State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). The absence of subject-matter jurisdiction renders void any judgment entered in the action. Sumlin Constr. Co., L.L.C. v. Taylor, 850 So.2d 303 (Ala.2002); Sustainable Forests, L.L.C. v. Alabama Power Co., 805 So.2d 681 (Ala.2001); Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941 (Ala.1994); Luken v. BancBoston Mortgage Corp., 580 So.2d 578 (Ala.1991). A void judgment will not support an appeal. Baldwin County v. Bay Minette, 854 So.2d 42 (Ala.2003); Kid's Care, Inc. v. Alabama Dep't of Human Resources, 843 So.2d 164 (Ala.2002)."
Moore v. John Hancock Life Ins. Co., 876 So.2d 443, 448 (Ala.2003). Accordingly, the summary judgment in favor of Wampol and against the Langhams in their individual capacities is vacated and the appeal is dismissed in part.
We must now address whether Wampol was entitled to a summary judgment on the Langhams' claim asserted on behalf of their son. The Langhams argue that the trial court erred in entering a summary judgment in favor of Wampol because, they assert, Wampol "filed his summary-judgment motion with no supporting affidavits or other evidence attached." However, this contention is incorrect because Wampol did file an unauthenticated copy of the incident report from the Elmore County Sheriff's Department in support of his motion for a summary judgment.
The Langhams failed to move to strike or otherwise object to Wampol's attachment of the unauthenticated incident report to his motion for a summary judgment. The court can consider inadmissible evidence if the party against whom it is offered does not object to the evidence by moving to strike it. See Glenn v. Vulcan Materials Co., 534 So.2d 598 (Ala.1988), overruled on other grounds, Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90 (Ala.1989)(plaintiff's failure to object at summary-judgment hearing to admissibility of deposition testimony and audit results that contained hearsay evidence warranted trial court's consideration of those documents); Berry Mountain Mining *64 Co. v. American Res. Ins. Co., 541 So.2d 4 (Ala.1989)(defendants' failure to move to strike unauthenticated documents attached to plaintiff's motion for a summary judgment waived any objections to the trial court's reliance on those documents). Our supreme court has stated:
"[I]nadmissible evidence cannot be considered under this exception (i.e., the exception that arises when the party does not object to the evidence) if to consider it would cause a `"gross miscarriage of justice."' Perry [v. Mobile County,] 533 So.2d [602,] 604-05 [(Ala.1988)](quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983))."
Ex parte Diversey Corp., 742 So.2d 1250, 1254 (Ala.1999). The defendant in Ex parte Diversey Corp. failed to offer any explanation as to why considering the inadmissible evidence would result in a gross miscarriage of justice. Similarly, the Langhams offer no explanation as to why considering the incident report would result in a gross miscarriage of justice. We conclude that the Langhams waived any objection to the admissibility of the incident report; the report is now part of the record.
"`Under Alabama law, as well as that of federal courts, a trial court pursuant to Rule 56 may properly consider any material that would be admissible at trial and all evidence of record as well as material submitted in support of or in opposition to the motion when ruling on a motion for summary judgment.'"
Mills v. City of Mobile, 549 So.2d 470, 471 (Ala.1989)(quoting Kutack v. Winn-Dixie Louisiana, Inc., 411 So.2d 137, 139 (Ala.1982)).
The Langhams filed a motion in limine seeking to exclude their son's juvenile court records on the ground that juvenile court records are confidential and, therefore, inadmissible. However, the Langhams have not argued that the incident report that was filed in the Elmore County Sheriff's Department is part of their son's juvenile court record and, therefore, inadmissible. Further, we disagree with the Langhams' argument that juvenile court records are inadmissible based on confidentiality in a malicious-prosecution claim brought on behalf of a juvenile.
Section 12-15-72(b), Ala.Code 1975, provides:
"The disposition of a child and evidence given in a hearing in the court shall not be admissible as evidence against him in any case or proceeding in any other court whether before or after reaching majority, except in a disposition hearing in a juvenile court or in sentencing proceedings after conviction of a crime for the purposes of a presentence study and report."
Rule 609(d), Ala. R. Evid., does not allow evidence of juvenile or youthful-offender adjudications for the purpose of attacking the credibility of a witness. However, the confidentiality afforded the juvenile is a qualified, not an absolute, privilege. Ex parte State Farm Fire & Cas. Co., 529 So.2d 975 (Ala.1988)(insurers were entitled to access and use certain police records and testimony of officers in a juvenile proceeding relating to a fire, in an action in which insurers sought declaration of their rights and obligations where the two juvenile defendants in the declaratory-judgment action were named as insureds, because the insurers had a legitimate interest in the case and the juveniles' right to confidentiality was not absolute). Additionally, evidence of a juvenile adjudication or a youthful offender adjudication may be used for impeachment, notwithstanding *65 the language of Rule 609(d), Ala. R. Evid., if the exclusion of such evidence would violate a litigant's constitutional rights. See Ex parte Lynn, 477 So.2d 1385 (Ala.1985). In Ex parte State Farm, 529 So.2d at 977, our supreme court quoted with approval from Daniels v. National Fire Ins. Co. of Hartford, 394 So.2d 683, 683-84 (La.Ct.App.1981):
"`The legislative limit upon admission protects the juvenile from the eyes of persons whose only interest is curiosity, but not persons whose interests are "proper." A parent whose child has been killed, accidentally or intentionally, has a proper interest, if anyone does, in observing the adjudication hearing. That parent equally has the right, in a civil action arising out of the death of the child, to impeach a witness's testimony that conflicts with that witness's testimony in the juvenile proceeding. One hardly need point out that a civil trial witness, juvenile or not, is solemnly bound to tell the truth, including truth that was shielded from public view in the juvenile case. The shield of confidentiality was not designed and cannot be permitted to fraudulently defeat civil reparation of juvenile wrong. The juvenile could therefore not successfully object to the introduction of his or her prior inconsistent statement, whether in the form of an extract from the transcript of the juvenile court testimony or in the form of testimony by plaintiff who heard the juvenile court testimony.'"
The Langhams brought the malicious-prosecution claim on behalf of their son; the complaint itself revealed that their son had been prosecuted as a juvenile. The Langhams alleged that the juvenile court proceedings had resulted in a favorable outcome to their son. In order to support this allegation, the Langhams would need to present some portion of the juvenile court record. In proving a malicious-prosecution claim, the best evidence that a prior proceeding has terminated in favor of the plaintiff is the court record. Poff v. Hayes, 763 So.2d 234 (Ala.2000); Kroger Co. v. Puckett, 351 So.2d 582 (Ala.Civ.App.1977). Because the Langhams have raised issues that cannot be resolved without reference to the juvenile court record, any right that they, on behalf of their son, would have had to otherwise assert confidentiality has been waived. See J.C. Penney Co. v. Miller, 182 Ga.App. 64, 354 S.E.2d 682 (1987)(juvenile waived whatever right he otherwise had to assert confidentiality of his juvenile court record because the essential element of a malicious-prosecution claim is that the juvenile proceedings had been terminated in his favor); Smith v. Anderson, 259 Ark. 310, 532 S.W.2d 745 (1976)(having relied upon juvenile court records to show dismissal of charges that defendants had brought against him, juvenile in his malicious-prosecution action could not complain that defendants insisted upon introduction of the full record).
Wampol stated in his summary-judgment motion:
"On May 11, 2002, Defendant, James Wampol, informed an Elmore County Deputy of a breaking and entering of his premises (see attached Incident/Offense Report labeled as Exhibit A). Subsequently he informed an Elmore County Juvenile Court Intake Officer of the incident. He was told that they would investigate the matter and if warranted they would proceed against the alleged offender, [the son], a minor.
"That investigation was done and as a result Investigator Crenshaw determined that there existed probable cause to arrest and prosecute [the son] and he, Crenshaw, filed a petition in Juvenile Court against [the son], the Plaintiff *66 herein. Defendant, James Wampol, did not sign that or any other petition against [the son]. Rules and procedures regarding Juvenile Court confidentiality prohibit Defendant herein from presenting the Juvenile Court record in support hereof.
"Consequently, as a matter of law, all of [the son]'s claims must fail as no dispute of material facts exists regarding the probable cause to prosecute [the son]. Defendant is due to be granted summary judgment on all of Plaintiffs' claims."
The incident report attached to Wampol's summary-judgment motion indicated that two juveniles were involved in breaking into his shed and that a neighbor had witnessed them in Wampol's backyard. The report stated:
"Victim states between dates and times listed, he believes the above named offenders went inside his shed having no right to do so. Once inside the offenders removed a pair of rubber boots from inside the shed and placed them on the step beside the front door of the shed. The victim advises when the offenders left the shed (one or both of) the offenders turned the power off causing the [frozen meat and two large fish] to spoil. The victim states he does wish to prosecute. Note the door to the shed was not locked according to the victim. Also the named witness stated he watched the two offenders go into the [victim]'s backyard at or around 6:50 pm. A pair of rubber boots was taken from the scene to be fingerprinted by this unit at the victim's request. No other evidence was found at the scene."
Wampol signed the incident report, affirming that he had read it and that all the information he gave to the sheriff's deputy was correct to the best of his knowledge.
Our supreme court has held that the test for determining the appropriateness of a summary judgment for a defendant in a malicious-prosecution action is as follows:
"The test that this Court must apply when reviewing the lack-of-probable-cause element in a malicious prosecution case in which summary judgment has been granted to a defendant is as follows: Can one or more undisputed facts be found in the record below establishing that the defendant acted in good faith on the appearance of things as they existed when suit was filed, based upon direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom? If so, then summary judgment in favor of the defendant on plaintiff's malicious prosecution count would be appropriate."
Eidson v. Olin Corp., 527 So.2d 1283, 1285-86 (Ala.1988).
While Wampol's bare allegation in his summary-judgment motion that the juvenile court investigator had determined that there was probable cause to arrest and prosecute the Langhams' son would have been insufficient to negate the lack-of-probable-cause element (without an affidavit from the investigator), the report attached to Wampol's summary-judgment motion is sufficient for Wampol, as the summary-judgment movant, to meet his burden.
In Lee v. Minute Stop, Inc., 874 So.2d 505 (Ala.2003), a convenience-store clerk placed a "911" emergency telephone call to the police reporting a robbery. The convenience-store clerk identified the plaintiff as being in the store during the incident, and the clerk answered questions during the police officer's investigation. The supreme court stated:
"Alabama law protects those who, in good faith, assist law-enforcement officials in identifying persons who may *67 have committed a crime. In Crown Central Petroleum Corp. v. Williams, 679 So.2d 651, 654 (Ala.1996), this Court, quoting Wofford Oil Co. v. Stauter, 26 Ala.App. 112, 154 So. 124 (1934), stated:
"`"In Wofford Oil Co. v. Stauter, 26 Ala.App. [112] at 114, 154 So. [124] at 126 [(1934)], the Court of Appeals noted the general rule:
"`"If [the defendant's agent] merely reported to the police officers what he had seen and the arrest and imprisonment of plaintiff followed from an investigation subsequently made by the officers, the act complained of would be the act of the officers and not of [the agent], although [the agent] had furnished the information leading to the investigation and arrest...."'
"In Cutts [v. American United Life Ins. Co.], 505 So.2d [1211] at 1215 [(Ala.1987)], this Court, quoting Alabama Power Co. v. Neighbors, 402 So.2d 958, 964 (Ala.1981), quoting in turn Dismukes v. Trivers Clothing Co., 221 Ala. 29, 32, 127 So. 188, 190 (1930), stated:
"`"Giving information of a crime to officers, or a request that the officers investigate a crime is not aiding or abetting or instigating a prosecution, unless such information was a misrepresentation of the facts in order to induce action, or there was a suppression of known material facts."'

"In Cutts, this Court stated that `[m]erely giving or negligently failing to give information to law enforcement officials is not enough' to sustain a malicious-prosecution claim. 505 So.2d at 1215. See also Pannell v. Reynolds, 655 So.2d 935, 938 (Ala.1994), where this Court said, `The [Alabama Power Co. v.] Neighbors [, 402 So.2d 958 (Ala.1981),] rule allows a citizen to fulfill one's civic duty to come forth in good faith with information concerning a suspected crime, without fear of repercussions if the information later leads to a wrongful arrest.' The Court, citing Ritch v. Waldrop, 428 So.2d 1 (Ala.1982), added a caveat, however, stating, `The rule, however, presupposes that the citizen has stated all material facts within his or her knowledge regarding the alleged crime and has not brought about the indictment by fraud, by suppressing facts, or by other misconduct.' 655 So.2d at 938."
874 So.2d at 512-13.
In the present case, Wampol's neighbor identified the Langhams' son as being one of the juveniles in Wampol's backyard. It is clear from the report that Wampol had not given the juveniles permission to be in his backyard. The Langhams contend that Wampol failed to present evidence that probable cause existed because Wampol stated in the incident report that the incident occurred between 6:30 p.m. on May 9, 2002, and 12:15 p.m. on May 11, 2002. A reasonable inference from the information contained in the incident report is that the neighbor witnessed the juveniles in Wampol's backyard on the evening of May 9 or May 10. In response to Wampol's summary-judgment motion, the Langhams and their son each filed an affidavit. All three affidavits indicate that there was an independent investigation by the juvenile court investigator after Wampol filed his report but before charges were filed. There was nothing submitted in the affidavits indicating that Wampol made false statements to the sheriff when he signed the incident report. Wampol reported what had happened on his property, and Wampol's neighbor reported what he had seen. Accordingly, we cannot say that the trial court abused its discretion in entering a summary judgment in favor of Wampol on the Langhams' malicious-prosecution *68 claim asserted on behalf of their son.
The Langhams argue that the trial court erred in awarding attorney fees pursuant to the ALAA because, they allege, the trial court had lost jurisdiction to award such fees.
"The plain language of § 12-19-27[2][, Ala.Code 1975,] states that the court must make its award of attorney's fees under the [Alabama Litigation Accountability] Act [ALAA] as part of its judgment on the merits of the case, `in addition' to other costs assessed against a frivolous litigant. The statute does not create a new or separate cause of action to be brought after a case is litigated and given a final adjudication on its merits; rather, it indicates that the motion must be made during the pendency of the case.
"....
"As interpreted by the supreme court, the ALAA provides for the trial court to consider the outcome of the proceedings in determining whether a party's action was without substantial justification. For this reason, it is within the court's discretion to hold a separate hearing on an ALAA petition after the entry of final judgment on the merits, provided that the court retained jurisdiction to do so. Meek [v. Diversified Prods. Corp., 575 So.2d 1100 (Ala.1991)]. Otherwise, a final judgment puts an end to all controversies litigated or which ought to have been litigated within the particular controversy. Vacalis v. [Lowry], 279 Ala. 264, 184 So.2d 345 (1966)."
Baker v. Williams Bros., Inc., 601 So.2d 110, 112 (Ala.Civ.App.1992).
In Donnell Trucking Co. v. Shows, 659 So.2d 667, 669 (Ala.Civ.App.1995), this court stated:
"In the present case the motions for attorney fees were pending at the time that the trial court issued its orders of June 16, 1993. This court would note that neither of these orders contained a ruling on the pending motions for attorney fees and that the trial court failed to retain jurisdiction to consider the motions at a later date....
"While Donnell's argument that it did everything that it could to have the matter heard can be appreciated, it is not persuasive. Since the [Alabama Litigation Accountability] Act provides that the trial court shall award the attorney fees as a part of its judgment, it was incumbent upon Donnell to have the trial court either rule on the pending motion for attorney fees when it granted its motion for summary judgment or reserve jurisdiction to hear the motion for attorney fees at a later date.
"In light of the above, we cannot say that, under the facts of this case, the trial court retained jurisdiction to hold a separate hearing on the motion for attorney fees after the entry of a final judgment. Consequently, we find that the trial court did not have jurisdiction to hear the motion for attorney fees."
In Gonzalez, LLC v. DiVincenti, 844 So.2d 1196 (Ala.2002), a property owner sued his insurer's roof-testing contractor and its president. The defendants moved for the payment of attorney fees under the ALAA. The trial court entered a summary judgment in favor of the defendants on August 24, 2001. On September 5, 2001, the trial court noted in the case action summary that it was aware that it had not ruled on the defendants' motion for attorney fees and that it thought attorney fees were warranted. The trial court assigned a mediator to determine the amount of attorney fees. On September 19, 2001, the property owner filed a notice of appeal. *69 On September 20, 2001, the mediator filed his report regarding attorney fees. On September 21, 2001, the property owner requested a hearing on the attorney-fee issue. No hearing was held, apparently because the property owner had filed his notice of appeal. On February 1, 2002, the trial court denied the defendants' motion for attorney fees.
The defendants in Gonzalez argued that because the motion for attorney fees was made before their motion for a summary judgment, because the trial court's summary judgment had not been certified as final pursuant to Rule 54(b), Ala. R. Civ. P., and because the trial court had noted that it had not yet ruled on the motion for attorney fees and had taken steps to do so before the property owner filed its notice of appeal, the trial court had retained jurisdiction to rule on the motion for attorney fees.
Our supreme court held that:
"The motion for attorney fees was pending when the trial court entered the summary judgment, and, when the trial court entered the summary judgment, it made no mention of reserving jurisdiction for a determination of attorney fees. Moreover, [the defendants] did not ask the trial court to reserve jurisdiction to consider an attorney-fee award. We, therefore, conclude that the summary-judgment order was a final disposition of this case...."
844 So.2d at 1202.
In the present case, Wampol's motion for attorney fees was pending when the trial court entered the summary judgment, and, when the trial court entered the summary judgment, it made no mention of reserving jurisdiction for a determination of attorney fees. Accordingly, the trial court did not have jurisdiction to award attorney fees after it had entered a summary judgment.
In conclusion, the summary judgment entered in favor of Wampol and against the Langhams on the malicious-prosecution claim asserted on behalf of their son is affirmed; the summary judgment in favor of Wampol and against the Langhams on their malicious-prosecution claims asserted in their individual capacities is vacated, and the appeal as to those claims is therefore dismissed. Moreover, the trial court's order awarding attorney fees pursuant to the ALAA is void, and the appeal as to that issue is therefore dismissed.
AFFIRMED IN PART; JUDGMENT VACATED IN PART; AND APPEAL DISMISSED IN PART.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., concurs in the result, without writing.
MURDOCK, J., concurs in part and dissents in part, with writing.
MURDOCK, Judge, concurring in part and dissenting in part.
I concur in the main opinion's holding that the summary judgment in favor of Wampol as to the Langhams' malicious-prosecution claim asserted on behalf of their son should be affirmed. With respect to the issues discussed hereinafter, however, I respectfully dissent.

I. The Standing Issue

I believe we must take care not to convert every failure to state a claim, see Rule 12(b)(6), Ala. R. Civ. P., into a jurisdictional, standing issueelse every time a court addresses the legal issue of whether a plaintiff's theory for relief is cognizable under Alabama law, a jurisdictional issue will be created. In this case, the Langhams allege that they personally have suffered a particularized injuryi.e., an "injury in *70 fact" distinct from that suffered by their sonand that this injury was caused by Wampol's wrongful conduct.[2] The problem for the Langhams, however, is that Alabama law simply does not provide a cause of action for malicious prosecution to the parents of a maliciously prosecuted child. That is, our substantive law contains no "zone of danger" notion that would make the Langhams' individual injurieslost wages, mental anguish, legal fees, and damage to reputationactionable.
I therefore believe the trial court had jurisdiction to consider the Langhams' claims. Those claims, however, simply were not viable under Alabama law. They were therefore due to be dismissed under Rule 12(b)(6) for failure to state a claim. Accordingly, I would affirm, rather than dismiss the appeal from, that portion of the trial court's judgment denying the Langhams' individual claims arising from the malicious prosecution of their son.

II. Timeliness of the ALAA Claim

The Langhams filed their complaint against Wampol, alleging malicious prosecution, on October 7, 2002. In conjunction with the timely filing of his answer to the complaint, Wampol, on November 13, 2002, filed a notice of a request for attorney fees under the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala.Code 1975 ("the ALAA"). Summary judgment in favor of Wampol was entered by the trial court approximately 11 months later, on October 15, 2003. Thereafter, both sides filed timely postjudgment motions. Specifically, on October 23, 2003, Wampol filed a motion asking the trial court to alter or amend its judgment so as to include an award of attorney fees in accordance with his pending request therefor under the ALAA. For their part, the Langhams also filed a timely postjudgment motion, asking the trial court to alter, amend, or vacate its judgment; the Langhams also responded to Wampol's motion seeking a ruling on his request for attorney fees under the ALAA. The trial court ruled upon each of the postjudgment motions within 90 days of their filing; the court granted Wampol's motion, while denying the Langhams' motion.
As the Court of Civil Appeals stated in Baker v. Williams Brothers, Inc., 601 So.2d 110 (Ala.Civ.App.1992):
"The ALAA provides, in pertinent part:
"`(a) ... [I]n any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys' fees and costs against any attorney or party, *71 or both, who has brought a civil action, or asserted a claim therein, or interposed a defense, that a court determines to be without substantial justification....
"`....
"`(c) The court shall assess attorneys' fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action or any part thereof, or asserted any claim or defense therein, that is without substantial justification....'
"§ 12-19-272, [Ala.] Code 1975 (emphasis added).
"When plain language is used in a statute, it must be interpreted to mean exactly what it says. Ex parte Madison County, 406 So.2d 398 (Ala.1981). The plain language of § 12-19-27[2] states that the court must make its award of attorney's fees under the Act as part of its judgment on the merits of the case, `in addition' to other costs assessed against a frivolous litigant. The statute does not create a new or separate cause of action to be brought after a case is litigated and given a final adjudication on its merits; rather, it indicates that the motion must be made during the pendency of the case."
601 So.2d at 111-12 (first emphasis in original; other emphasis added).
The request in this case for attorney fees under the ALAA was timely filed well before entry by the trial court of its judgment and "during the pendency of the case."[3] Because the ALAA provides that a fee award thereunder must be made by a trial court "as part of its judgment" in the underlying case, when the trial court issued its judgment on October 15, 2003, but failed to address Wampol's claim under the ALAA, Wampol took a prudent course of action made available to him under our rules of procedurehe filed a timely post-judgment motion. See Rule 59(e), Ala. R. Civ. P.[4] In that motion, Wampol dutifully asked the trial court to modify its October 15, 2003, judgment so as to include a ruling on his outstanding request for attorney fees under the ALAA. The case was still pending in the trial court at that juncture, and the trial court had jurisdiction to modify its judgment. See George v. Sims, 888 So.2d 1224, 1227 (Ala.2004).
Baker v. Williams, 601 So.2d 110, and Donnell Trucking Co. v. Shows, 659 So.2d 667 (Ala.Civ.App.1995), both of which are relied upon in the main opinion for a contrary result, are distinguishable. The attempts in each of those cases to have the trial court rule on the request for attorney fees under the ALAA came after an otherwise final judgment had been entered and after more than 30 days had passed since the entry of the judgment, thereby depriving the trial court of any further jurisdiction over the case.
*72 Gonzalez, LLC v. DiVincenti, 844 So.2d 1196 (Ala.2002), also relied upon by the main opinion, likewise is distinguishable. The request for attorney fees in Gonzalez was filed before the trial court's entry of a summary judgment. As the main opinion in the present case points out, the trial court in Gonzalez made no mention of reserving jurisdiction for a subsequent determination at to an award of attorney fees and the defendants did not ask the trial court to reserve jurisdiction to consider an attorney-fee award. 844 So.2d at 1202. Moreover, in contrast to the present case, the defendant in Gonzalez did not file a timely Rule 59 postjudgment motion asking the trial court to modify its judgment so as to include a ruling on the outstanding claim for attorney fees under the ALAA. The summary judgment in Gonzalez therefore became, as the Supreme Court put it, the "final disposition" of that case. 844 So.2d at 1202.
As this court stated in Donnell Trucking Co.:
"Since the [Alabama Litigation Accountability] Act provides that the trial court shall award the attorney fees as part of its judgment, it was incumbent upon Donnell to have the trial court either rule on the pending motion for attorney fees when it granted its motion for summary judgment or reserve jurisdiction to hear the motion for attorney fees at a later date."
659 So.2d at 669 (emphasis in Donnell Trucking Co. omitted; emphasis added). Here, Wampol took the former course; he attempted "to have the trial court ... rule on the pending motion for attorney fees" by filing a timely postjudgment motion asking the trial court to rule on the fee request in connection with granting a summary judgment. The fact that such a course was not pursued in Baker, Donnell Trucking Co., or Gonzalez, does not make it an invalid course. Unlike the main opinion, therefore, I see no basis for concluding that the trial court's order awarding attorney fees pursuant to the ALAA is void.

III. The Merits of the Request for Attorney Fees under the ALAA
Despite the fact that the trial court had jurisdiction in this case to make the attorney-fee award at issue, I believe that award was inappropriate. In order to support an award of attorney fees under the ALAA, the record must support a finding that the litigation brought by the Langhams was "without substantial justification." The fact that Wampol successfully defended against the Langhams' malicious-prosecution claim, thereby establishing that he had "probable cause" to institute proceedings against the Langhams' son (see Eidson v. Olin Corp., 527 So.2d 1283 (Ala.1988)), does not mean that the Langhams were necessarily "without substantial justification" to think otherwise. If it did, then every successful defendant in a malicious-prosecution action would be entitled to attorney fees under the ALAA.
Based on my review of the record in this case, it appears that the Langhams, although they did not prevail on their malicious-prosecution claim, did have substantial justification for bringing that claim. I therefore would reverse the trial court's award of attorney fees under the ALAA.
NOTES
[1] Like the parents in Lambert, supra, and Justice, supra, the parents in the present case sought damages for harm to their reputations.
[2] See generally Duke Power Co. v. Carolina Envt'l Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) ("The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have `alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). As refined by subsequent reformulation, this requirement of a `personal stake' has come to be understood to require not only a `distinct and palpable injury,' to the plaintiff, Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), but also a `fairly traceable' causal connection between the claimed injury and the challenged conduct."); see also Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case"); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).
[3] Even if Wampol's first request for attorney fees under the ALAA had not been filed until after the trial court had entered its judgment in the underlying case, so long as a motion therefor was filed within 30 days of the entry of the judgment, and therefore while the trial court still had jurisdiction over the case (see, e.g., George v. Sims, 888 So.2d 1224 (Ala. 2004)), the trial court arguably would have had jurisdiction to act upon that motion. That is not the case before us, however.
[4] Alternatively, Wampol could have asked the trial court to specifically "reserve jurisdiction" over the attorney-fee claim in order to hear it at a later date. See Gonzalez, LLC v. DiVincenti, 844 So.2d 1196 (Ala.2002). Of course, even a request such as this would have had to come within 30 days of the entry of the judgment, before the trial court lost jurisdiction. See George v. Sims, 888 So.2d at 1227.